2008 ME 127

**Kelly DeCAMBRA**

v.

**Kimberly CARSON et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 30, 2008.

Decided: July 29, 2008.

Kelly DeCambra, Biddeford, ME, pro se.

John J. Wall, III, Esq., Kenneth D. Pierce, Esq., Erica M. Johanson, Esq., Monaghan Leahy, LLP, Portland, ME, for Kimberly and Samantha Carson.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

SILVER, J.

[¶ 1] Kelly DeCambra appeals from a judgment entered in the Superior Court (York County, *Brennan, J.*) granting Kimberly and Samantha Carson's motion for summary judgment on DeCambra's complaint alleging their negligence in the wrongful death of DeCambra's son.[1] We affirm the judgment.

## I. FACTS AND PROCEDURE

[¶ 2] The following facts are undisputed, except where noted. At all pertinent times, Kelly DeCambra has been the personal representative of the estate of her son, Lionel St. Hilaire.[2] St. Hilaire was killed by Samantha Carson's ex-boyfriend, Zachary Fenderson.

[¶ 3] Kimberly Carson and her twenty-three-year-old daughter, Samantha Carson, resided with Kimberly's boyfriend, Chris Carter, in the Carson home. Zachary Fenderson also lived at the Carson home for approximately six years because he was having family problems and was romantically involved with Samantha.

[¶ 4] Fenderson had struggled with depression over the years. By spring 2004, Fenderson and Samantha were experiencing relationship problems. In March or April of that year, Fenderson attempted suicide. After that, the Carsons gave his gun collection to his father so that he would not have access to firearms. In the late spring of 2004, Fenderson moved out of the Carson residence, but he retained access to the Carson home.

[¶ 5] By early July 2004, Samantha and Fenderson had apparently ended their romantic relationship, and Samantha had begun dating Lionel St. Hilaire. St. Hilaire was with Samantha at her residence on July 15, when Fenderson arrived. Samantha believed that Fenderson was a little drunk but otherwise fine. Fenderson, St. Hilaire, and Samantha spoke for about twenty minutes. Following that conversation, Samantha and St. Hilaire left together to visit her cousin. Fenderson also left. Samantha and St. Hilaire returned at approximately 2:30 A.M. on July 16. Kimberly Carson was sleeping at that time, and Fenderson was in the basement. He walked upstairs, shot St. Hilaire three times, killing him, and then killed himself. Prior to this incident, neither Samantha nor Kimberly had any notice of suspicious activity, threatening communications, or unstable actions on Fenderson's part. Neither Samantha nor Kimberly believed Fenderson to be dangerous or violent. His actions on July 16 were totally shocking and unpredictable to Samantha.

[¶ 6] In August 2005, DeCambra, individually and as personal representative of St. Hilaire's estate, filed suit against the Carsons, Chris Carter, and the estate of Zachary Fenderson, alleging negligence, statutory wrongful death, assault, battery, and loss of comfort, society, and companionship. The Carsons moved for summary judgment on the negligence claim asserted

---

1. We recognize that the negligence claim is properly subsumed under the wrongful death statute. 18–A M.R.S. § 2–804(2007).

2. This fact was denied in the Carsons' answer to DeCambra's second amended complaint and was not dealt with in the statement of material facts. However, whether this is true or not does not change our ultimate decision.

against them, which the Superior Court granted. DeCambra filed this appeal.[3]

## II. DISCUSSION

[¶ 7] On appeal, DeCambra argues that (1) the Superior Court improperly granted summary judgment; (2) the trial justice perceived a conflict and should have recused himself; (3) the Superior Court erred in finding that no relationship existed between Samantha Carson and St. Hilaire; and (4) the Superior Court erred in finding that Samantha and Kimberly Carson had no duty to protect St. Hilaire from foreseeable harm.

[¶ 8] DeCambra argues that the judge advised her counsel that "he previously and/or currently presided over a criminal case involving either the Defendant Samantha Carson and/or her younger sister Cherie Carson which possibly provided him knowledge of the case prior to it coming before him." This assertion alone, even assuming it is true, is not enough to compel recusal. *Johnson v. Amica Mut. Ins. Co.*, 1999 ME 106, ¶ 11, 733 A.2d 977, 980. "[A] judge need not disqualify if the judge can act 'with complete impartiality' and no reasonable grounds exist to question the judge's ability to act in such a manner." *State v. Rameau*, 685 A.2d 761, 763 (Me.1996). Moreover, pursuant to canons 3(E)(2) and 3(E)(2)(a) of the Maine Code of Judicial Conduct, a judge must recuse himself on motion for recusal made by any party in which his impartiality might reasonably be questioned or in which the judge has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding. In her appeal to us, DeCambra does not allege any of these conditions and, in fact, admits that

the judge offered her time to investigate the potential conflict. She made no motion for recusal. We review this issue for obvious error because of her failure to motion for recusal. *In re William S.*, 2000 ME 34, ¶ 8, 745 A.2d 991, 995. We find no such error, and therefore conclude that the judge's decision to not recuse himself was proper.

[¶ 9] We turn now to DeCambra's remaining issues, which can be considered together.

[¶ 10] "We review a grant of summary judgment de novo, considering the evidence in the light most favorable to the party against whom judgment has been granted to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Raisin Mem'l Trust v. Casey*, 2008 ME 63, ¶ 12, 945 A.2d 1211, 1214 (quotation marks omitted).

[¶ 11] To be actionable, a claim of negligence requires the existence of a duty of care. *See Trusiani v. Cumberland & York Distribs., Inc.*, 538 A.2d 258, 261 (Me.1988). We have previously held that there is no general obligation to protect others from the actions of third parties, even where one knows the third party is or could be dangerous. *Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 1999 ME 144, ¶ 12, 738 A.2d 839, 844.

[¶ 12] The only exception to this rule we have recognized is where there is a "special relationship" between plaintiff and defendant. *See Fortin v. The Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 39, 871 A.2d 1208, 1222. Specifically, we held that "if a plaintiff asserts the existence of facts that, if proven, establish a

---

3. This appeal concerns only the Carsons' motion for summary judgment, in which the Superior Court considered only DeCambra's claim of negligence as against the Carsons.

DeCambra does not appeal the dismissal without prejudice of her claims against Chris Carter or the estate of Zachary Fenderson, and so we do not consider them.

special relationship with a defendant in accordance with section 315(b) of the RE-STATEMENT (SECOND) OF TORTS, an action may be maintained against the defendant for negligent supervision liability in accordance with section 317 of the Restatement." *Id.* Section 315(b) provides that there is a duty to control the conduct of a third person to prevent him from causing harm to another if "a special relation exists between the actor and the other which gives to the other a right to protection." RESTATEMENT (SECOND) OF TORTS § 315(b) (1965). Section 317 provides for a duty in a master-servant relationship, RESTATEMENT (SECOND) OF TORTS § 317 (1965), and so does not apply here.

[¶ 13] In *Fortin,* we held that special relationships for purposes of a negligence claim are grounded in the notion that a person or entity owed the plaintiff a fiduciary duty. 2005 ME 57, ¶ 26, 871 A.2d at 1218. A fiduciary duty will be found to exist where " 'the law will recognize both the disparate positions of the parties and a reasonable basis for the placement of trust and confidence in the superior party in the context of specific events at issue.' " *Id.* (quoting *Bryan R.,* 1999 ME 144, ¶ 20, 738 A.2d at 846). Here, the parties were not in disparate positions; one was not superior to the other. They did not have a special relationship, and this situation does not call for an extension of *Fortin.*

The entry is:

Judgment affirmed.