STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-08-175

PAUL C. DAVIS,

Plaintiff,

v.

EDWIN RODRIGUEZ, JR., and
DENNIS BEAULIEU, and
SCOTT DIONNE, and
BROCKWAY-SMITH COMPANY, and
DAVID WEBB, and
JOHN T. CYR & SONS, INC., d/b/a
CYR BUS LINE, and
RUPUNUNI, INC., d/b/a AN
AMERICAN BAR & GRILL,
CARMEN VERANDAH, & JOE'S
SMOKE SHOP,

Defendants.

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

APR · 7 2009

FILED & ENTERED
SUPERIOR COURT

FEB 0ᴢ 2009

PENOBSCOT COUNTY

The plaintiff, Paul Davis, alleges that he sustained injuries when struck by a car driven the defendant, Edwin Rodriguez. In Count I of his complaint he alleges that Rodriguez's negligence in driving his vehicle in an intoxicated condition caused his injuries. Rodriguez was allegedly invited on a fishing trip from Orrington to Bar Harbor by his employer, Dennis Beaulieu, drank heavily on the bus and at a Bar Harbor restaurant, and drove his vehicle after returning to Orrington. Davis' claim against Rodriguez is not at issue in any of the present motions.

At issue presently are Counts II, V, and VI of Davis' complaint. In Count II of his complaint, Davis alleges liability under the Maine Liquor Liability Act ("MLLA"), 28-A M.R.S. §§ 2501-2520 (2008), against five defendants: (1) Brockway-Smith Company, the sponsor of the bus trip which allegedly served alcohol on the bus; (2) Scott

1

Dionne, an employee of Brockway-Smith Company who allegedly served alcohol on the bus; (3) John T. Cyr & Sons, Inc., the bus line used for the trip; (4) David Webb, an employee of John T. Cyr & Sons who was on the bus; and (5) Rupununi, Inc., the corporate owner of a Bar Harbor restaurant called Carmen Verandah that allegedly served Rodriguez. Davis alleges in Counts V and VI that Brockway-Smith Company, Dionne John T. Cyr & Sons, and Webb, were negligent in failing to take proper measures to supervise Rodriguez or prevent him from driving in an intoxicated condition.

There are several pending motions in this matter. Brockway-Smith Company filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) seeking dismissal the MLLA claim against it for failure to provide notice pursuant to 28-A M.R.S. § 2513 and seeking dismissal of the negligence claim against it based upon the exclusive remedy provision of the MLLA. *See* 28-A M.R.S. § 2511 (2008). Dionne filed a motion to dismiss on the same grounds as did Webb and John T. Cyr & Sons together. Rupununi filed a similar motion to dismiss only addressing the issue of notice under the MLLA because no common law negligence claim was made against Rupununi.

The parties motions to dismiss as they relate to notice rely upon matters outside the pleadings and will be treated as motions for summary judgment. M.R. Civ. P. 12(b). The parties have submitted supporting and opposing statements of material facts as well as affidavits relied upon in such statements. The parties' motions to dismiss as they relate to the exclusivity of available remedies under the MLLA do not rely upon matters outside the record and will be treated as true motions to dismiss.

Brockway-Smith Company and Dionne have also filed motions to stay the issuance of a standard scheduling order and to stay discovery. They rely upon the

2

arguments set forth in their motions to dismiss and claim that, in light of such arguments, permitting full discovery would require them to incur unnecessary expense.

## DISCUSSION

### A. Required Notice under the MLLA

> Every plaintiff seeking damages under [the MLLA] must give written notice to all defendants within 180 days of the date of the server's conduct creating liability under [the MLLA].... Failure to give written notice within the time specified is grounds for dismissal of a claim, unless the plaintiff...shows good cause why notice could not have reasonably been filed within the 180-day limit.

28-A M.R.S. § 2513 (2008).

It is undisputed in the present case that Davis failed to give notice pursuant to section 2513 within 180 days to any of the defendants. Davis asserts that he believed that he had good cause for failing to give timely notice because neither he nor his attorney knew the name of the Bar Harbor restaurant where Davis consumed alcohol (*i.e.*, Carmen Verandah) or the name of the company that employed Dionne (*i.e.*, Brockway-Smith Company). (Davis Aff. ¶¶ 3 & 4).

"Good cause requires a showing that 'the plaintiff was unable to file a claim or was meaningfully prevented from learning of the information forming the basis of his or her complaint.'" *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 22, 796 A.2d 683, 689-90 (quoting *Peters v. City of Westbrook*, 2001 ME 179, ¶ 6, 787 A.2d 141, 143). "[G]ood cause may be established 'only when a plaintiff is truly *prevented* from obtaining the information" and "[p]laintiffs are expected to endeavor to obtain information on their own if help is not forthcoming." *Id.* ¶ 23, 796 A.2d at 690 (quoting *Peters*, 2001 ME 179, ¶ 8, 787 A.2d at 143-44) (emphasis in original).

Davis has failed to establish good cause for his failure to give timely notice of claim. The only evidence offered in support of good cause is his subjective belief that he

had good cause based upon his failure to know the identity of two of the defendants. The lack of this knowledge by Davis and his attorney does not constitute good cause. This is particularly true because Davis has admitted in his statements of material facts that he was also on the bus trip and was present during the dinner at Carmen Verandah. Davis was not prevented from learning the identity of these two defendants and, therefore, lacks good cause for delay. Furthermore, Davis makes no argument and cites to no evidence in support of good cause for the delay in notice to Dionne, John T. Cyr & Sons, or Webb. Therefore, Count II of the complaint must be dismissed pursuant to section 2513 because no genuine issues of material fact remain.

### B. Exclusivity of Remedy under the MLLA

The MLLA "is the exclusive remedy against servers...for claims by those suffering damages based on the servers' service of liquor." 28-A M.R.S. § 2511. The defendants, Brockway-Smith Company, Dionne, John T. Cyr & Sons, and Webb, argue that Davis' common law negligence claims against them should be dismissed because such claims are centered upon their service of alcohol to Rodriguez and, therefore, the MLLA provides an exclusive remedy.

The exclusivity provision of the MLLA is applicable whenever the service of liquor "is at the very center of creating the special relationship, dangerous situation or unreasonable risk." *Jackson v. Tedd-Lait Post No. 75, American Legion*, 1999 ME 26, ¶ 9, 723 A.2d 1220, 1222. However, "[t]he MLLA cannot be construed to bar every claim where actions by a defendant, other than serving alcohol, are alleged to have caused a plaintiff injury and there is evidence that during the course of their activities, the defendant happened to serve the plaintiff one or more alcoholic beverages." *Thibodeau v. Slaney*, 2000 ME 116, ¶ 17, 755 A.2d 1051, 1056.

4

The aforementioned defendants have invoked the MLLA's exclusivity provision in a motion to dismiss for failure to state a claim. In the context of such a motion, "dismissal is proper 'only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim.'" *Heber v. Lucerne-in-Maine Vill. Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066 (quoting *Hall v. Envtl. Bd. of Protection*, 498 A.2d 260, 266 (Me. 1985)). This is a difficult hurdle insofar as Maine is a notice-pleading jurisdiction.

> It is not necessary to state all the facts necessary to constitute a good cause of action. The United States Supreme Court has gone so far as to say that the motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'... What is intended...is that if fair notice of the claim is given, the complaint is not fatally defective because of the failure to allege in nonconclusory form every fact essential to recovery.

*Doane v. Pine State Volkswagen, Inc.*, 377 A.2d 481, 484 (Me. 1977) (quoting 1 Field, McKusick, & Wroth, *Maine Civil Practice* § 12.11 at 249 (2d ed. 1970)) (internal citations omitted).

Davis has properly alleged negligence on the part of Brockway-Smith Company, Dionne, John T. Cyr & Sons, and Webb. He did not need to state in his complaint all of the facts necessary to allege a duty on the part of the defendants. The court cannot say on the basis of the complaint alone that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* The invocation of the MLLA's exclusivity provision is appropriately raised as an affirmative defense, which would more appropriately be determined in the context of summary judgment or trial. *See Thibodeau*, 2000 ME 116, ¶ 19-20, 755 A.2d at 1056. Therefore, the defendants' motions to dismiss Counts V and VI alleging negligence must be denied.

## C. Motions to Stay

Brockway-Smith Company and Dionne have also filed motions to stay the issuance of a standard scheduling order and to stay discovery. They argue that permitting full discovery will subject them to unnecessary expenses in light of the defenses they have raised in their motions to dismiss. Davis counters by arguing that he cannot properly rebut the arguments raised on the motions to dismiss without discovery.

This motion may now be considered in the context of the court having dismissed Davis' MLLA claim and declined to dismiss his negligence claims. Davis has alleged that Brockway-Smith Company, Dionne, John T. Cyr & Sons, and Webb were negligent with regards to their control or supervision over Rodriguez. While such allegations are sufficient to survive a motion to dismiss, the issue of duty remains central. A special relationship creating a duty between the aforementioned defendants and Davis may have been created under the MLLA by the service of liquor. *Jackson*, 1999 ME 26, ¶ 8, 723 A.2d at 1221. However, if the service of such liquor was "at the very center of creating the special relationship, dangerous situation, or unreasonable risk" then the MLLA's exclusivity provision would apply and Davis could not prevail on his negligence claims. *Id.* ¶ 9, 723 A.2d at 1222.

The court orders that discovery in this matter as it relates to Brockway-Smith Company, Dionne, John T. Cyr & Sons, and Webb be limited to matters necessary to resolve the issue as to whether or not those defendants owed a duty to Davis independent of any imposed by the MLLA. The existence or nonexistence of such a duty can be properly resolved in the context of summary judgment; therefore, discovery should be conducted towards the goal of a timely and efficient resolution in such a manner. Disputes over the proper scope of this limited discovery will be addressed as they arise.

## CONCLUSION

No genuine issues of material fact remain regarding the motions for summary judgment as to Count II; therefore, summary judgment is granted in favor of the defendants and Count II of the complaint is dismissed. Davis has properly alleged the negligence of Brockway-Smith Company, Dionne, John T. Cyr & Sons, and Webb; therefore, the complaint states a claim upon which relief can be granted and the motions to dismiss Counts V and VI of the complaint are denied.

The entry is:

1.     The motions for summary judgment on Count II of the complaint filed by the defendants, Brockway-Smith Company, Scott Dionne, John T. Cyr & Sons, Inc., David Webb, and Rupununi, Inc. are **GRANTED**. Count II of the complaint is **DISMISSED**.

2.     The motion to dismiss Count V of the complaint filed by the defendants, John T. Cyr & Sons and David Webb, are **DENIED**.

3.     The motions to dismiss Count VI of the complaint filed by the defendants, Brockway-Smith Company and Scott Dionne, are **DENIED**.

4.     Discovery as it relates to Brockway-Smith Company, Scott Dionne, John T. Cyr & Sons, Inc., and David Webb is limited in accordance with this opinion. M.R. Civ. P. 26(b).

5.     This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: February 2, 2009

William R. Anderson
Justice, Superior Court

7

--------------------------------------------------------------------

| SEQ | TITLE | NAME | DOB | ATTY |
|-----|-------|------|-----|------|
| 001 | PL | PAUL C DAVIS BY C.D. Briggs, Esq. | / / | T |
| 002 | DEF | EDWIN RODRIGUEZ JR by Christopher Dinan Esq | / / | T |
| 003 | DEF | DENNIS BEAULIEU by Jeffrey Silverstein Esq | / / | T |
| 004 | DEF | SCOTT DIONNE by Paul Castos Esq | / / | T |
| 005 | DEF | DAVID WEBB by Thomas Majerison, Esq | / / | T |
| 006 | DEF | BROCKWAY SMITH COMPANY by Paul Catsos Esq | | T |
| 007 | DEF | JOHN T CYR AND SONS INC DBA CYR BUS LINE by Thomas Majerison Esq | | |
| 008 | DEF | RUPUNUNI INC DBA AN AMERICAN BAR AND GRILL A by Frederick Costlow, Esq. | | |

STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss.                                    CIVIL ACTION
                                                  DOCKET NO. CV-08-175
                                                  WRA- PEN - 7/16/2010

PAUL C. DAVIS,

          Plaintiff,

                                                  **ORDER ON MOTION**
                                                  **FOR SUMMARY**
                                                  **JUDGEMENT**

EDWIN RODRIGUEZ, JR.,
DENNIS BEAULIEU, SCOTT
DIONNE, BROCKWAY-SMITH
COMPANY, DAVID WEBB, JOHN
T. CYR & SONS, INC., d/b/a CYR
BUS LINE, and RUPUNUNI, INC.,
d/b/a AMEERICAN BAR & GRILL
& CARMEN VERANDAH &
JOE'S SMOKE SHOP

          Defendants.


This matter comes before the court on the defendants'—Brockway Smith

Company ("Brockway-Smith"), Scott Dionne, Jon T. Cyr & Sons, Inc. ("Cyr & Sons")

and David Webb—motions for summary judgment filed pursuant to M.R. Civ. P. 56.

Having reviewed the parties' filings and reflected on the oral arguments presented by

counsel during the March 5, 2010, and June 4, 2010, hearings on the matter, the Court

grants the defendants' motions, respectively.

*BACKGROUND*

This litigation has a long history before the Court and the all of the parties are

familiar with, and agree on, the same basic facts. On August 19, 2006, Brockway-Smith

employee Scott Dionne helped organized a fishing and dinner trip to Bar Harbor, Maine

in an effort to build potential business relationships with local contractors. Dionne

1

extended the invitation to Crescent Lumber, a company operating a lumber business in Orrington, Maine. As part of the plan, Crescent Lumber chartered a bus,[1] operated by Cyr & Sons and driven by Webb, to transport the entire party from Orrington to Bar Harbor for the days' fishing trip, and back. Throughout the day, the persons attending the event, including co-defendant Edwin Rodriguez, consumed alcoholic beverages. The parties do not dispute that the plaintiff, Paul Davis, was also a participant in the excursion. The Cyr & Sons bus returned the group to the Crescent Lumber parking lot in Orrington at the conclusion of the day's events. Upon exiting the charter bus, defendant Rodriquez proceeded to his vehicle, started the engine, and struck the plaintiff while operating his vehicle.

The plaintiff filed a six-count complaint against the defendants in this action alleging liability under the Maine Liquor Liability Act ("MLLA"), 28-A M.R.S. §§ 2501-2520, and under theories of common law negligence. Defendants Brockway-Smith, Dionne, Cyr & Sons, Webb, and Repununi Inc. filed M.R. Civ. P. 12(b)(6) Motions to Dismiss. On February 2, 2009, the Court issued an Order dismissing, in its entirety, Count II of the Complaint—asserting grounds for liability under the MLLA against defendants Brockway-Smith, Dionne, Cyr & Sons, Webb, and Repununi, Inc.—because the plaintiff had failed to give the required notice of his MLLA claims within the 180-day limitations period provided by statute. 28-A M.R.S. § 2513; *Davis v. Rodriguez*, 2009 Me. Super. LEXIS 67, *4-*6 (February 2, 2009). However, the Court reserved for disposition, at a later time, the issue of whether the plaintiff could maintain his common law negligence claims, in Counts V and VI of the Complaint, against Brockway-Smith,

---

[1] The parties agree that Brockway-Smith reimbursed Crescent Lumber for the cost of chartering the Cyr & Sons bus. (*See* C&S/WSMF ¶ 7.)

2

Dionne, Cyr & Sons and Webb. *See Davis* at *5–*6 (noting that the plaintiff's common law negligence claims met the notice pleading requirement). Pursuant to discovery disputes regarding the scope of the court's February 2009 Order, the court issued additional orders, on March 9, 2009, and June 22, 2009, limiting subsequent discovery to "facts relevant to the existence of a duty owed by defendants [Brockway-Smith, Dionne, Cyr & Sons, and Webb] to the plaintiff." *Davis v. Rodriguez et al.*, BANSC-2007-00175, at *3 (June 22, 2009).

Defendants Cyr & Sons and Webb filed the M.R. Civ. P. 56 Motion for Summary Judgment now before the Court on December 16, 2009. Defendants Brockway-Smith and Dionne filed their own M.R. Civ. P. 56 motion shortly thereafter, on December 28, 2009. On June 4, 2010, the Court conducted a hearing to discuss the potential effect of a Massachusetts case, *Commerce Ins. Co. v. Ultimate Livery Serv., Inc.*, 897 N.E. 50, 452 Mass. 639, (Mass. 2008), on the issue of whether Cyr & Sons/Webb owed a duty to prevent Rodriguez from driving after the fishing excursion had concluded. All of the moving defendants continue to maintain that the plaintiff has failed to establish the duty element necessary to shield his common law negligence claims from summary judgment review.

*STANDARD OF REVIEW*

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence indicates no genuine issue of material fact that is in dispute, and, accordingly, the moving party is entitled to judgment as a matter of law." *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825. A genuine issue of material fact exists when there is sufficient evidence to require the fact-

3

finder to choose between competing versions of a fact that could affect the outcome of the case. *Id.; Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. The court will review the evidence in the light most favorable to the non-moving party. *Cookson v. Brewer School Dep't*, 2009 ME 57, ¶ 12, 974 A.2d 276, 281.

"[A] plaintiff who brings a cause of action for negligence must establish a prima facie case that the defendant owed him a duty of care, the defendant breached that duty, and the breach was a proximate cause of some injury to the plaintiff." *Estate of Cilley v. Lane*, 2009 ME 133,¶ 10, 985 A.2d 481, 485 (citing *Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 8, 969 A.2d 935, 938). The threshold question of whether a duty exists is a question of law and reflects proper grounds for summary judgment disposition. *See Radley v. Fish*, 2004 ME 87, ¶ 6, 856 A.2d 1196, 1198-99 (citing *Parrish v. Wright*, 2003 ME 90, ¶ 18, 828 A.2d 778, 783). The Court discusses the issues raised by the defendants' respective motions for summary judgment in turn.

*DISCUSSION*

A. Cyr & Sons and Webb Motion for Summary Judgment

1. Applicability of the MLLA[2]

At the threshold, Cyr & Sons and Webb may not employ the MLLA's exclusivity provision, 28-A M.R.S. § 2511, as an affirmative defense to the common law negligence claims alleged in Count V of the plaintiff's complaint. By definition, the exclusivity provision applies only to "servers" of alcohol and operates to shield such "servers" from

---

[2] The Court recognizes that the discussion in this section operates somewhat inconsistently with the Court's previous order, *Davis v. Rodriguez et al.*, 2009 Me. Super. LEXIS 67, *4-*6 (February 2, 2009), which dismissed the plaintiff's MLLA claims in their entirety for failure to comply with the act's time limits. In this section, the court determines that MLLA does not apply to Cyr and Webb because they were not "servers". In essence, the earlier ruling assumed applicability while it is now ruled that the act is, in fact, not applicable. The Court embarks in the analysis, however, precisely because defendants Cyr & Sons/Webb again endeavor to invoke the MLLA as part of their argument in seeking summary judgment.

4

common law negligence claims "by those suffering damages based on the *servers'*

*service of liquor." Id.* (emphasis added); *see also* 28-A M.R.S. § 2504 ("Any person who

suffers damage, as provided in section 2508, may bring an action under this act, against a

*server* for negligently or recklessly *serving* liquor to an individual.").

Count V of the plaintiff's July 2008 complaint does not allege that Cyr & Sons or

Webb sold, gave, or otherwise provided alcohol to Rodriquez or any other participant of

the Brockway-Smith/Crescent Lumber excursion. *See* 28-A M.R.S. § 2503(5) (providing

the definition of server). Nor did Cyr & Sons or Webb engage in the "service of alcohol,"

which would have included selling, gifting or other furnishing of liquor to the persons on

the charter bus. 28-A M.R.S. § 2503(6). To the extent there is ambiguity in the word

"furnishing," as Cyr & Sons and Webb now claim, the Court will adopt the common

meaning of "furnishing" found in the criminal code, 17-A M.R.S. § 1101(18)(a), which

defines the word as to "furnish, give, dispense, administer, prescribe, deliver, or

otherwise transfer to another." *See, e.g., Corey v. C.N. Brown Co.*, 1998 Me. Super.

LEXIS 206, *4 (August 14, 1998) (employing the definition of the word "furnish"

provided in the criminal code to interpret its meaning under the MLLA). Defendants Cyr

& Sons and Webb have not provided, and the Court has been unable to locate, any law to

support a theory that those who merely acquiesce in the service of alcohol, in this case,

providing a (roving) location for people to consume it, are entitled to define themselves

as "servers" in order to invoke the MLLA's exclusivity provision. The record is clear

that neither Webb, nor Cyr & Sons, served, provided, furnished, delivered or transferred

any alcohol to Rodriguez or any other participant of the Bar Harbor fishing excursion.

(*See* C&S/WSMF ¶ 10 and POSMF ¶10.) Because defendants Cyr & Sons and Webb

5

were neither "servers" of alcohol, nor engaged in the "service of alcohol," within the ambit of the MLLA they cannot employ the exclusivity provision contained in 28-A M.R.S. § 2511 as an affirmative defense.[3]

### 2. Effect of Cyr & Sons internal company policy prohibiting alcohol consumption on chartered buses

The plaintiff claims that the facts, when viewed in the light most favorable to him, establish a duty owed by defendants Cyr & Sons and Webb to enforce its own internal company policy, allegedly written on the invoice provided to Brockway-Smith and Dionne, prohibiting the "consumption of alcoholic beverages by passengers . . . on buses." (Compl. ¶ 46(e)); *(See* Plaintiff's Opposing Statement of Material Facts to Cyr & Sons/Webb Mot. Summ. J. ¶¶ 41-43) [hereinafter POSMF to CS & WSMF ¶ ___]. Because an issue remains concerning the force of the alcohol prohibition on Cyr & Sons charter buses, the plaintiff has framed a subtle "duty" issue and one of first impression in this state.

The question of whether the Cyr & Sons, and vicariously Webb, owed a duty to the plaintiff on the facts of this case is ultimately a function of "whether the defendant is under any obligation for the benefit of the particular plaintiff." *Trusiani v. Cumberland & York Distributor's, Inc.*, 538 A.2d 258, 261 (Me. 1988). Where the common law or

---

[3] The case cited by Cyr & Sons and Webb for the proposition that the exclusivity provision of the MLLA should apply to the catalogue of negligence claims in Count V of the complaint because "the actions complained are so closely connected to the service of alcohol" is easily distinguished on its facts. (Def.'s C&S/W Rep. to Pl.'s Opp. at 3.) In *Ferrell v. Clark*, 2008 Me. Super. LEXIS 168 (July 17, 2008), the defendant server provided co-defendants with the potent "red bull" and vodka mixed drinks. *Id.* at 2. After serving the co-defendants with this alcoholic beverage, the defendant then served the co-defendants only "red bull" after ascertaining the men to be visibly intoxicated. *Id.* at *2, *5. The court ruled that MLLA provided the plaintiff with an exclusive remedy against the defendant server because the "service of Red Bull [was] so closely connected to its service of alcohol." *Id.* *6- *7 n.1. Here, neither Webb, nor Cyr & Sons, can maintain any argument that they were either "servers" of alcohol, or participated in the "service of liquor," within the purview of the MLLA. Consequently, the MLLA does not apply to the claims in found in Count V of the plaintiff's complaint and these defendants find no refuge in the MLLA's exclusivity provision. 28-A M.R.S. § 2511.

statutory provision fails to affirmatively establish the existence or non-existence of a

duty, the Law Court has provided that foundational principles of negligence law guide the

analysis:

> In the decision of whether or not there is a duty, many factors interplay: the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind.

*Id.* (citing Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 15 (1953)) (internal quotation

marks omitted).

In *Trusiani*, the Law Court inspected the potential for an internal company policy

to influence common law duty. An intoxicated employee injured the plaintiff in a car

accident after attending a Christmas Party on the premises of his employer, Cumberland

& York Distributor's, Inc., a wholesale distributor of beer and wine. *Trusiani*, 538 A.2d

at 259. At the time, Cumberland & York Distributors had an internal company policy

prohibiting the consumption of alcohol on its premises consistent with the rules

promulgated by the Maine Liquor Commission. *Id.* at 260, 262. The facts developed

during trial indicated that the employee brought the alcohol to the Christmas Party

himself (concealing servings of whiskey in a Coke can) and that company supervisors did

not observe the employee to be visibly intoxicated at the time he departed from the

holiday event. *Id.* at 260. The Law Court ultimately vacated the jury verdict—finding

negligence on the part of Cumberland & York Distributor's, Inc.—and reversed the trial

court's implicit finding that the company, by virtue of its alcohol policy, "had a duty to

the driving public to use reasonable care to prevent its employees from participating in

7

conduct that could impair their driving or prevent them from driving under such circumstances." *Id.* at 261.

Although *Trusiani* is factually distinguishable from the instant litigation,[4] the broader lesson informs the analysis here. The duty owed the plaintiff is not necessarily grounded in the internal policy of Cyr & Sons. The unfortunate injuries sustained by the plaintiff in this case arose as a direct consequence of the belligerent and intoxicated state of Rodriguez, and those potentially responsible for providing him alcohol during the August 16, 2006, fishing excursion to Bar Harbor. So long as Cyr & Sons and Webb could safely perform the carrier duties they were committed to do under the circumstances—"to exercise the highest degree of care compatible with the practical operation of the machine," including "reasonably safe discharge at a reasonably safe location"—Maine law requires no more. *Mastriano v. Blyer et al.*, 2001 ME 134, ¶¶ 13-14, 779 A.2d 951, 954.

Endeavoring to evaluate all of the issues raised by the M.R. Civ. P. 56 motion filed by Cyr & Sons and Webb, the Court found a recent Massachusetts case that directly conflicts with Law Court's disposition in *Mastriano* . In *Commerce Ins. Co. v. Ultimate Livery Serv., Inc.*, 987 N.E. 2d 50, 59, 452 Mass. 639, 650 (Mass. 2008), the Massachusetts Supreme Judicial Court announced a nuanced rule concerning the duty imposed on carriers "engaged in the business of transporting persons consuming alcohol." Distinguishing among the types of "common carriers" that ferry the general public from one place to another based on scheduled routes and destinations and "private

---

[4] In this case, the social hosts of the outing, Brockway-Smith, and perhaps, Crescent Lumber Employees, provided alcohol for the bus ride down to Bar Harbor. (C&S/WSMF ¶¶ 10, 18.) The parties have provided no facts demonstrating that Webb or Cyr & Sons provided alcohol or otherwise promoted the use of alcohol while in route from Orrington to Bar Harbor on the morning of August 16, 2006.

carriers for hire" contracted by specific individuals to transport individuals while permitting, and to some extent promoting, alcohol consumption, the high court of Massachusetts found that such "tort defendants owed a duty of reasonable care to avoid discharging a passenger, which they knew, or should have known, was intoxicated and likely to drive an automobile." *Id.* at 657, 452 Mass. at 646-47. On the Court's own motion, the parties were asked to discuss the potential effect and applicability of this Massachusetts precedent on the duty issues raised in this action.

From the onset, the Court observes that the approach of *Ultimate Livery* is fundamentally incompatible with the Law Court's decision in *Mastriano*. The Supreme Judicial Court of Massachusetts had no qualms pointing out the discrepancy between the two rules. *Compare Mastriano*, 2001 ME 134 ¶¶ 13-14, 779 A.2d at 954 (holding that common carriers owe no duty to an intoxicated customer beyond "exercising the highest degree of care compatible with the practical operation with the machine," including "reasonably safe discharge at a reasonably safe location") *with Ultimate Livery*, 897 A.2d 50, 57 n.10, 452 Mass. 639, 647 (recognizing the conflict inherent in the rule announced in its decision with the Law Court's *Mastriano* opinion). Unlike *Ultimate Livery*, *Mastriano* makes no attempt to distinguish between duty imposed on "common carriers" from the duty imposed on "private carriers for hire" specifically engaged in the business of transporting alcohol consuming revelers from one place to another. *See Ultimate Livery*, 897 A.2d at 57, 60, 452 Mass. at 646, 650 ("We are not concerned with a common carrier, but rather are concerned with a private carrier for hire."). Lacking a more definitive distinction between "common carriers" and "private carriers for hire" from the highest court of this state, this Court is persuaded that the carrier duty owed by

Cyr & Sons and Webb is more akin to the taxi operator in *Mastriano* than to the private carrier in *Ultimate Livery*[5]. Cyr & Sons and Webb were simply hired to take passengers from Orrington to Bar Harbor, and back, on the day of the event. More importantly, no facts have been brought to the Court's attention tending to show that Cyr & Sons specifically engaged in the business of transporting drinking revelers from one place to another, or otherwise touted the drinking of alcoholic beverages as a benefit of its charter services. On these facts, the Court is more inclined to side with the established law in *Mastriano* than to rely on a rule similar to the one recently fashioned in Massachusetts.

Insofar as the *Mastriano* Court declined to extend the duty of a carrier to include "an in loco parentis type of responsibility to intervene . . . in an intoxicated passenger's life to ensure the passenger does not harm himself," the logical extension of the rule applies to prevent this Court from imposing a duty on the carrier in this case to intervene in the life of an intoxicated passenger in order to prevent harm to another passenger, especially after both persons had been provided safe discharge at a safe location. *Mastriano*, 2001 ME 134, ¶ 13, 779 A.2d 554. To accept *Ultimate Livery* would eviscerate the holding of *Mastriano* and require Cyr & Sons and Webb to take active steps to prevent persons like Rodriquez from driving—at his own peril and at the peril of the public generally—even after safe discharge from the bus. The Court declines the opportunity, and in the absence of more affirmative guidance from the Law Court, chooses not to impose an *Ultimate Livery*-like duty that would fundamentally redefine the duty imposed on certain carriers in Maine. *See Mastriano*, 2001 ME 134, ¶ 13-14, 779 A.2d at 955.

---

[5] In fact, a taxi company is more like a private company for hire, as defined by *Ultimately Livery,* than a traditional common carrier.

Disposing of the issue raised by *Ultimate Livery* does not necessarily end the analysis. Examining the more general principles of duty woven into the fabric of our negligence law, the internal company policy of Cyr & Sons does not provide the duty the plaintiff urges. *Trusiani,* 538 A.2d at 261; *see also Mastriano,* 2001 ME 134, ¶ 12, 779 A.2d at 955 ("[W]hen we talk of duty, we often discuss one's obligation to . . . conduct ourselves or our business in ways that do not cause injury to others."). To the extent Webb knew about or acquiesced in the consumption of alcohol that occurred drinking on the bus ride,[6] perhaps enhancing the probability that one of his passengers would be harmed by Rodriguez after he had exited the bus (given the pattern of events that allegedly unfolded on the bus that day), that fact alone, even if proved, would not be a tipping point of the analysis. As in *Trusiani,* neither Webb nor Cyr & Sons provided the alcohol to the participants of the Bar Harbor fishing excursion. (C&S/WSMF ¶ 10; POSMF to C&S/WSMF ¶ 10.) To that end, the Law Court has observed caution "in assigning duty which imposes an affirmative obligation to act" unless "the putative wrongdoer has advanced to such a point to have launched a force or instrument of harm." *Mastriano,* 2001 ME 134, ¶ 17, 779 A.2d at 955 (citing *H.R. Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160, 159 N.E. 896, 898 (N.Y 1928)). The harm eventually suffered by the plaintiff in this case originated in the ill-conceived decision of Dionne to bring alcohol on the Cyr & Sons bus and by defendant Rodriquez's own lack of self-control. (*See* C&S/WSMF ¶ 9.) The potentially negligent actions undertaken by Rodriquez at the

---

[6] There is an issue of fact as to whether Webb knew, or should have known, that the participants of the excursion were drinking alcoholic beverages in route from Orrington to Bar Harbor n the morning of August 16, 2006. On one hand, the plaintiff claims that Webb, given the raucous behavior of his passengers and after noticing two closed coolers being loaded onto the bus that morning, could not have been reasonably unaware that drinking was taking place. (POSMF to C&S/WSMF ¶¶ 19, 21-22.) On the other, Webb claims to have had no knowledge of whether his passengers were drinking. (C&S/WSMF ¶¶ 20-22.)

conclusion of the trip were a product of his own volition and not the result of Cyr & Sons or Webb launching a "force of instrument or harm" by perhaps acquiescing in the consumption of alcohol while transporting the participants of the excursion down to Bar Harbor on the morning of August 16, 2010. *Mastriano*, 2001 ME 134, ¶ 17, 779 A.2d at 955.

Furthermore, the Court determines that placing a duty on Cyr & Sons and Webb to prevent the harm that occurred to the plaintiff in this case would not serve the ends of justice and the notions of fairness on "where the loss should fall." *Trusiani*, 538 A.2d at 262. Concluding the existence of a "duty of care" on the basis of the internal company policy would place Cyr & Sons and Webb in the inequitable position of defending against this lawsuit without the benefit of the affirmative defense afforded the other defendants in this action by the exclusivity provision of the MLLA. Even if the plaintiff had followed the statutory procedure designed to vindicate his MLLA claims, the MLLA would provide no protection to defendants Cyr & Sons and Webb precisely because they are not "servers" or involved with the "service of alcohol." 28-A M.R.S. 2511. The facts developed in the summary judgment record also indicate that the participants in the Bar Harbor fishing excursion, especially Rodriguez, consumed alcohol not only on the ride down to Bar Harbor, but continuously throughout the day. (POSMF to C&S/WSMF ¶¶ 38, 47-54.) The Court does not find that notions of fairness on where the loss should fall would be reinforced if the Court were to impose the type of duty the plaintiff urges.

From all of the foregoing, the Cyr & Sons policy, even if proven to exist in the manner the plaintiff describes it, does not establish that Cyr & Sons owed a duty to protect him from Rodriguez, once both men had been safely discharged from the bus at

12

the conclusion of the day's events.[7] The Law Court's *Mastriano* decision, coupled with analysis of the broader policy considerations outlined in *Trusiani*, persuades the Court that the internal company policy alleged to prohibit alcohol consumption on Cyr & Sons buses does not create the duty, or forge any obligation for the carrier to have acted as an instrument of good for the plaintiff here.

3. Carrier duties and "special relationships"

Closely related to the analysis above, the plaintiff's second theory purporting to establish a duty also fails to withstand analysis. This Court, in the absence of affirmative guidance from the Law Court on the issue, chooses not to create a "special relationship" above and beyond that ordinarily imputed for "common carriers." *See Roberts v. Yellow Cab Co.*, 240 A.2d 733, 737 (Me. 1968) (citing with approval case decided by the Oregon Supreme Court including "motor buses" among the types of common carriers). The plaintiff argues that "Webb, as the driver of the bus, had a special relationship with the passengers [on the bus] and knew or should have known that letting Rodriguez off in the [Crescent Lumber] parking lot was not a safe exit in a safe place . . . in view of the [Rodriguez's] daylong activities of loud and obnoxious behavior, fights on the bus and the sentiments expressed on the bus that Rodriguez should receive more punches and be

---

[7] Plaintiff also cites *Joy v. Eastern Maine Medical Center*, 529 A.2d 1364 (Me. 1987) for the proposition that the law Court has previously embraced the foreseeability of harm as an arbiter of the duty analysis. While *Joy* undeniably supports the duty of certain individuals to protect the interests of third parties, the case is distinguishable insofar as it applies to a narrow set of circumstances where a doctor fails to warn a patient of risks of driving after treatment. *Id.* at 1365. The *Joy* case is particularly difficult to harmonize with the facts of this case primarily because the foreseeability element inherent in the analysis conflicts with the notion that the "duty urged [by the plaintiff] here has no obvious means of fulfillment." *Mastriano*, 2001 ME 134, ¶¶ 12, 19, 779 A.2d at 954-55. As in *Mastriano*, once Rodriguez had been safely discharged from the Cyr & Sons bus in the Crescent Lumber parking lot, the Court wonders whether Webb would then have a duty to become an "instrument of good" not only to control Rodriguez, but protect all those who may come in contact with him. *Id.* at ¶ 17, 779 A.2d at 955. That is, "there is no obvious course of conduct by which any new duty to become an instrument of good could be fulfilled in a manner that is foreseeable or defineable to a jury." *Id.* at ¶ 19, 779 A.2d at 956.

thrown off the bus." (Pl.'s Opp. to C&S/W Mot. Summ. J. at 9.) The plaintiff further theorizes that "[i]t would be foreseeable that someone in the parking lot would be injured by Rodriguez trying to escape his tormentors in the parking lot." *Id.* This claim, even when viewed in the light most favorable to the plaintiff, would require this court to extend the duty of carriers beyond those currently recognized under Maine law.

To the extent a "special" relationship existed, the only cognizable legal duty Webb owed, vicarious to his employment as a driver with Cyr & Sons, was to "exercise the highest degree of care compatible with the practical operation of the machine in which the conveyance was undertaken." *Mastriano v. Blyer et al.*, 2001 ME 134, ¶ 13, 779 A.2d 951, 954 (citations omitted). "This heightened standard of care continues until the carrier has given its passenger[s] a reasonably safe discharge at a reasonably safe location." *Id.* (citations omitted). The facts provided in the summary judgment record reflect that Webb drove the fishing excursion participants down from Orrington to Bar Harbor without incident. Despite the scuffle that broke out between Rodriquez and other participants while transporting the group back from Bar Harbor to Orrington later that day, (POSMF ¶ 55; C&S/WRSMF ¶ 55), Webb safely returned the participants to the Crescent Lumber parking lot—thus giving his passengers, including the plaintiff, a reasonably safe discharge at a reasonably safe location.[8] Whether Webb recognized Rodriguez to be noticeably intoxicated at the point of discharge is irrelevant—Webb met the obligation of carrier duty at the moment his passengers got off the Cyr & Sons bus.

---

[8] The plaintiff's argument that the discharge point in the Crescent Lumber parking lot was not a reasonably safe location is without factual support. The parking lot was the predetermined meeting/drop-off location agreed upon by all the parties involved in this litigation and not a place where the dangers posed were either inherent or reasonably foreseeable. *See Mastriano*, 2001 ME 134, ¶ 18, 779 A.2d at 955.

Webb was under no duty, as the plaintiff would have it, to pull the bus over after the alleged fracas involving Rodriguez or call law enforcement authorities to handle the disturbance. Although "a common carrier is under a duty to its passengers to take reasonable action . . . to protect them against unreasonable risk of harm" while the passengers remain under its care, "[a] carrier is under no duty to one who has left the vehicle and ceased to be a passenger." RESTATEMENT (SECOND) OF TORTS § 314(1)(a), cmt. (c) (1965). If Rodriguez had injured the plaintiff while on the bus ride back to Orrington, the Court might be inclined to reach a different conclusion.[9] *See, e.g., Knoud v. Galante*, 696 A.2d 854, 856 (Pa. Super. Ct. 1997) (providing that a common carrier has a duty to protect on-board passengers and may be required to restrain or eject disorderly passengers to protect other riders) (citations omitted). However, once Rodriguez and the plaintiff exited the vehicle, Webb had no affirmative obligation to control Rodriguez, or prevent him from driving, for the protection of the plaintiff, or others similarly situated. To hold otherwise would unravel the Law Court's duty analysis in *Mastriano*.

B. Brockway-Smith and Dionne Motion for Summary Judgment

As noted by the Court its previous orders, the MLLA exclusivity provision, 28-A M.R.S. § 2511, narrows an injured plaintiff's ability to recover under alternative theories of common law negligence when "the service of liquor is at the very center of creating the special relationship, dangerous situation or unreasonable risk." *Thibodeau v. Slaney*, 2000 ME 116, ¶ 13, 755 A.2d 1051, 1054 (quoting *Jackson v. Tedd-Lait Post No. 75 American Legion*, 1999 ME 26, ¶¶ 8-9, 723 A.2d 1220) (internal quotation marks

---

[9] The plaintiff does not dispute that other participants on the excursion—notably, Dionne and Dennis Beaulieu—helped to subdue the physical skirmish that had allegedly broken out between Rodriquez and others on the bus while in route back to Orrington. (*Compare* POSMF to C&S/WSMF¶ 31 *with* C&S/WSMF ¶ 31.)

omitted). Having dismissed any MLLA claims the plaintiff had filed against Brockway-Smith and Dionne, (Compl. Count II ¶¶ 34-37), the plaintiff must necessarily show, as in *Thibodeau*, that a relationship existed between himself and these moving defendants, apart from one created by the alleged service of alcohol, for his common law negligence claims to survive summary judgment review. *Thibodeau*, 2000 ME 116, ¶ 13, 755 A.2d at 1055 (citing *Jackson*, 1999 ME 26, ¶ 8, 723 A.2d at 1221.) The Plaintiff provides two theories contending that a relationship, beyond one governed by the MLLA, existed between himself and Brockway-Smith/Dionne. The following discussion illuminates why the Court finds the plaintiff's efforts to plead around the MLLA unavailing.

The plaintiff first claims that Brockway-Smith had a duty to abide by the Cyr & Sons safety policy of prohibiting the consumption of alcohol on company chartered buses. As a result, the plaintiff insinuates that Dionne not only had a duty to prevent the service and consumption of alcohol on the Cyr & Sons bus—a claim he concedes is within the purview of the MLLA and, therefore, not actionable here—but had an additional duty not to purchase alcohol prior to the April 19, 2006, outing. (Pl.'s Mot. in Opp. to Def. Brockway-Smith/Dionne Mot. Summ. J. at 9) ("Making the decision in purchasing the alcohol prior to [the date of Brockway-Smith/Crescent Lumber fishing excursion] would not implicate the MLLA[,] . . . [but would instead] implicate the negligent violation of the express written safety policy of the Cyr Bus Company."). Whatever the Cyr & Sons policy, the plaintiff has failed to articulate exactly what duty Dionne owed to the Plaintiff. *See DeCambra*, 2008 ME 127, ¶ 11, 953 A.2d at 1165 ("To be actionable, a claim of negligence requires the existence of a duty.") (citation omitted).

Framing the issue in this way, the plaintiff assumes a duty to exist without necessarily articulating the legal basis creating it.

The Court's June 22, 2009 Order, BANSC-08-00175, clarified for the parties that the plaintiff could only maintain the common law negligence claims contained in paragraphs 49(e) and (f) of the July 2008 complaint insofar as he could provide proof that Brockway-Smith had a duty to protect him from the potential actions of other intoxicated participants involved in the fishing excursion.[10] Any duty Brockway-Smith owed to the Plaintiff to abide by the Cyr & Sons "safety policy," ostensibly prohibiting alcohol consumption on the bus, is inextricably related to the alleged service of alcohol perpetrated by Dionne, and perhaps others, by furnishing coolers filled with beer and hard liquor while in route from Orrington to Bar Harbor. (POSMF to B-S/DSMF ¶41; B-S/DRSMF ¶ 41.)[11] The alleged "negligent purchase" of alcohol naturally precedes the alleged negligent service, and it is the connection between Brockway-Smith's alleged negligent service of the alcohol to Rodriquez and the plaintiff's injuries that triggers the MLLA's exclusivity provision. *See Jackson*, 1999 ME 24, ¶ 9, 723 A.2d at 1221. Unlike the situation in *Thibodeau*, "the only real link between the plaintiff and [Brockway-Smith] was the service of alcohol" and the plaintiff's attempt to plead around the MLLA exclusivity provision is effectively countered by Brockway-Smith's hyper-vigilant effort

---

[10] In the June 22, 2009 Order, the Court specifically limited discovery efforts of the parties "to facts relevant to the existence of a duty owed by [Brockway Smith and Dionne] to the plaintiff" and expressly reiterated that the "service of alcohol or consumption by Edwin Rodriguez was not relevant to the existence of a duty in a claim for common law negligence." *See Davis v. Rodriguez et al.*, BANSC-08-00175, *3 (Me. Super. Ct. June 22, 2009).

[11] Although a genuine issue of material fact may exist concerning whether the Cyr & Sons safety policy prevented "alcohol consumption" on the bus, the policy would in no way prohibit Dionne from merely purchasing alcohol prior to the trip and loading the beverages on the bus for consumption later that day. Thus, it cannot be said that that the purchase of alcohol alone violated the Cyr &Sons "safety policy."

17

to confine the plaintiff's claims to the MLLA. *Thibodeau*, 2000 ME 116, ¶¶ 14, 18, 755 A.2d at 1055, 1056.

The plaintiff's next argument, attempting to establish a special relationship with Brockway-Smith or Dionne "secondary" to the one concerning the negligent service of alcohol, is equally unavailing. The plaintiff asserts that Dionne "had a special relationship to the group as a person in charge and knew or should have known that letting Rodriguez off in the [in the Crescent Lumber Parking Lot] was not a safe exit in a safe place for Rodriquez in view of [his behavior that day.]" (Pl.'s Mot. in Opp. to Def. Brockway-Smith/Dionne Mot. Summ J. at 9.) The only plausible negligence action that might survive summary judgment review under these circumstances might be a claim for "negligent supervision." *See DeCambra*, 2008 ME 127, ¶ 12, 953 A.2d at 1165 (carving out an exception from the general rule that there is no general obligation to protect others from the actions of third parties unless the plaintiff can prove the existence of facts establishing a special relationship between the plaintiff and the defendant).[12]

Although the summary judgment record alludes to the fact that Dionne perhaps made special efforts to thwart Rodriquez's disruptive behavior during the day's events, (*see* POSMF to B-S/DSMF ¶¶ 46, 49, 51, 53 & 63), Dionne's caution in dealing with

---

[12] The RESTATEMENT (SECOND) OF TORTS § 315(a)-(b) (1965) obviates the no duty rule with respect to third party claims in two specific situations:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless:
>> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct; or
>> (b) a special relation exists between the actor and the other which gives the other a right to protection.

*Id. DeCambra* involved only the application of the § 315(b), but to the extent this litigation potentially implicates § 315(a) and § 315(b), the court analyzes the potential applicability of both provisions.

Rodriquez fails to establish that a special relationship existed between Dionne and the plaintiff, or between Dionne and Rodriguez. Simply being the "person in charge" of organizing the events (and perhaps keeping order) is insufficient to establish the type of special relationship necessary to sustain a negligent supervision claim. *See, e.g., Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶¶ 16-21, 970 A.2d 310, 315-16 (discussing the various types of "special relationships" recognized under Maine law). The facts developed in the summary judgment record reflect that although Dionne may have helped organize the fishing excursion to foster business relationships between all the various entities involved, (POSMF to B-S/DSMF ¶ 6), Dionne was a Brockway-Smith employee (B-S/DSMF ¶ 7.) The plaintiff was an employee of Crescent Lumber (B-S/DSMF ¶ 2) and Rodriquez a guest of one of Crescent Lumber's regular contractors, Dennis Beaulieu (B-S/DSMF ¶¶ 17, 20). Moreover, Dionne, as a Brockway-Smith employee, could not exact control over the Crescent Lumber parking lot where he himself was a visitor. (B-S/DSMF ¶ 3.) The plaintiff "admitted" each of foregoing facts in his M.R. Civ. P. 56(h)(2) Opposing Statement. Furthermore, no party has produced facts evincing any sort of agreement to supply transportation to or from the Crescent Lumber parking lot prior to, or after, the excursion to Bar Harbor.

In short, no special relationship, such as one of master-servant, existed between Dionne and the Plaintiff, or between Dionne and Rodriquez. *See DeCambra*, 2008 ME 127, ¶ 12, 953 A.2d at 1165 (noting that plaintiff can maintain a negligent supervision claim under § 317 of the RESTATEMENT (SECOND) OF TORTS only where the plaintiff can allege facts, if proved, indicating a special relationship with the defendant in accordance with section 315(b)). At best, Dionne and Brockway-Smith acted as a social host to the

plaintiff and Rodriquez, but that distinction does not necessarily translate into a special relationship with either man—requiring Dionne either to control the behavior of Rodriguez, RESTATEMENT (SECOND) OF TORTS § 315(a) (1965), or to protect the plaintiff from Rodriguez once the events of the day had concluded, *id.* § 315(b). By helping coordinate Bar Harbor fishing excursion, Dionne's position did not forge the special relationship necessary to allow the Plaintiff to perfect a common law negligence claim independent of a claims under the MLLA. The alcohol Dionne provided to the participants created the only definitive link between defendants, Brockway-Smith and Dionne, and either the plaintiff or Rodriguez. Consequently, there remains no genuine issue of material fact concerning the existence of a special relationship, and the plaintiff finds no refuge in either of the provisions in § 315 of the RESTATEMENT (SECOND) OF TORTS that would allow his claim to proceed—independently of an MLLA claim—on a theory of negligent supervision.[13]

---

[13] The facts cited by the plaintiff similarly fail to show the parties' interaction to implicate a "fiduciary relationship" that would otherwise trigger the existence of a duty on the part of Dionne to either control Rodriguez or protect the plaintiff. *DeCambra*, 2008 ME 127, ¶ 13, (citing *Fortin v. The Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 26, 871 A.2d 1208, 1218). (providing that "special relationships for the purposes of a negligence claim are grounded in the notion that a person or entity owed the plaintiff a fiduciary duty.") In considering whether a fiduciary relationship exists, the court analyzes the disparate positions of the parties and considers whether the plaintiff had a reasonable basis for the placing of trust and confidence in the superior party in the context of specific events at issue. *Id.* Here, as in *DeCambra*, "the parties were not in disparate positions [and] one was not superior to the other." *Id.*

In addition, the Court need not address the issue of whether Dionne "knew or should have known" that allowing Rodriquez to exit the Cyr & Sons charter bus in the Cresecnt Lumber parking lot in Orrington at the conclusion of the fishing excursion "was not a safe exit in a safe place for Rodriquez in view of [his behavior that day.]" This claim confuses the duties ordinarily imposed on "carriers" with those that might be implicated by Dionne's alleged "supervisory" authority over the participants of the fishing excursion. At this point, the Court will not impute carrier duties on Dionne when he was neither connected to the operation of the charter bus, nor affiliated with the Cyr & Sons other than as a customer.

The entry is:

1. Defendants', Cyr & Sons, Inc. and David Webb, M.R. Civ. P. 56 Motion for Summary Judgment, filed on December 16, 2007, is **GRANTED**.

2. Defendants', Brockway-Smith Company and Scott Dionne, M.R. Civ. P. 56 Motion for Summary Judgment, filed on December 28, 2009, is **GRANTED**.

3. This order is incorporated into the docket pursuant to M.R. Civ. P. 79(a).

Date: July 16, 2010

William R. Anderson
Justice, Superior Court

21

PAUL C DAVIS  - PLAINTIFF
163 HEALD CAMP RD
TROY ME 04987
Attorney for: PAUL C DAVIS
C DONALD BRIGGS  - RETAINED 07/02/2008
BRIGGS & COUNSEL
815 COMMERCIAL STREET
ROCKPORT ME 04856


vs
RUPUNUNI INC DBA AN AMERICAN BAR GRILL DISM - DEFENDANT
119 MAIN ST
BAR HARBOR ME 04609
Attorney for: RUPUNUNI INC DBA AN AMERICAN BAR GRILL DISMISSED
FREDERICK COSTLOW  - RETAINED 08/27/2008
RICHARDSON WHITMAN LARGE & BADGER
ONE MERCHANTS PLAZA, SUITE 603
PO BOX 2429
BANGOR ME 04402-2429


EDWIN RODRIGUEZ JR - DEFENDANT
17 MALLISON FALLS RD
WINDHAM ME 04062
Attorney for: EDWIN RODRIGUEZ JR
CHRISTOPHER DINAN  - RETAINED 08/26/2008
MONAGHAN LEAHY LLP
95 EXCHANGE ST
PO BOX 7046
PORTLAND ME 04112-7046


DENNIS BEAULIEU  - DEFENDANT
267 BURLEIGH RD
BANGOR ME 04401
Attorney for: DENNIS BEAULIEU
JEFFREY SILVERSTEIN  - RETAINED 08/28/2008
LAW OFFICE OF JEFFREY SILVERSTEIN PA
9 CENTRAL STREET SUITE 209
BANGOR ME 04401


SCOTT DIONNE  - DEFENDANT
211 CORNER RD
BRIDGEWATER ME 04735
Attorney for: SCOTT DIONNE
PAUL CATSOS  - RETAINED
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630


DAVID WEBB  - DEFENDANT
3 RYENSON RD
ALTON ME 04468

**DOCKET RECORD**

Attorney for: DAVID WEBB
THOMAS MARJERISON  - RETAINED 08/19/2008
NORMAN HANSON & DETROY
415 CONGRESS STREET
PO BOX 4600
PORTLAND ME 04112-4600


BROCKWAY SMITH COMPANY - DEFENDANT
1 PORTLAND SQUARE, P O BOX 586
PORTLAND ME 04112
Attorney for: BROCKWAY SMITH COMPANY
PAUL CATSOS  - RETAINED
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630


JOHN T CYR AND SONS INC DBA CYR BUS LINE - DEFENDANT
P O BOX 1012
BANGOR ME 04402
Attorney for: JOHN T CYR AND SONS INC DBA CYR BUS LINE
THOMAS MARJERISON  - RETAINED 08/19/2008
NORMAN HANSON & DETROY
415 CONGRESS STREET
PO BOX 4600
PORTLAND ME 04112-4600



Filing Document: COMPLAINT                    Minor Case Type: AUTO NEGLIGENCE
Filing Date: 07/02/2008

## Docket Events:

07/02/2008 FILING DOCUMENT - COMPLAINT FILED ON 07/02/2008

07/02/2008 Party(s):  PAUL C DAVIS
            ATTORNEY - RETAINED ENTERED ON 07/02/2008
            Plaintiff's Attorney: C DONALD BRIGGS

07/02/2008 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 07/02/2008
            TO ATTORNEY FOR PLAINTIFF.

08/08/2008 Party(s):  BROCKWAY SMITH COMPANY
            SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 07/30/2008
            AS TO DEFENDANT BROCKWAY-SMITH COMPANY BY CHARLES BACALL, ESQ.

08/08/2008 Party(s):  BROCKWAY SMITH COMPANY
            SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 08/05/2008

08/19/2008 Party(s):  DENNIS BEAULIEU
            SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 08/08/2008
            SERVICE ON DEFENDANT DENNIS BEAULIEU TO BRENDA BEAULIEU, WIFE

08/19/2008 Party(s):  DENNIS BEAULIEU
            SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 08/18/2008