2000 ME 116

**Kevin M. THIBODEAU**

v.

**Daniel SLANEY.**

Supreme Judicial Court of Maine.

Argued April 5, 2000.
Decided June 21, 2000.

Charles T. Ferris, Esq., (orally), Sidney H. Geller, Esq., Waterville, for plaintiff.

James Brett Main, Esq., (orally), Platz & Thompson, P.A., Lewiston, for defendant.

Panel WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Kevin M. Thibodeau appeals from the judgment of the Superior Court (Somerset County, *Marsano, J.*) determining that Thibodeau's negligence claim was subject to the exclusivity provision of the Maine Liquor Liability Act[1] (MLLA) and vacating a jury verdict and judgment that had been entered in his favor. Thibodeau argues that it was error for the court to vacate the judgment because the facts of the case he presented were properly decided pursuant to his cause of action for negligence and did not fall within the scope of the MLLA. Daniel Slaney argues that the trial court's judgment should be affirmed even if his MLLA argument is invalid because of Thibodeau's comparative fault and improper closing argument.

[¶ 2] Because the MLLA issue was not properly presented or preserved, and because there is no other error affecting substantial rights which justifies overturning the jury's verdict, we vacate the trial court's action and reinstate the judgment on the jury's verdict.

## I. CASE HISTORY

[¶ 3] On November 4, 1995, Kevin Thibodeau and Kevin Slaney, Daniel Slaney's brother, prepared to voluntarily assist in staining Daniel Slaney's house. Prior to arriving at the house, and while waiting for Daniel Slaney to arrive, each man consumed several alcoholic beverages. When Slaney arrived, he walked around the house with Thibodeau pointing out areas that still needed to be stained, including several areas that could only be accessed by going on the roof.

[¶ 4] During the course of the project, Thibodeau testified that he consumed several more beers and that Slaney had provided him several shots of Captain Morgan's Spiced Rum. While there is no dispute that Thibodeau had consumed a substantial amount of alcoholic beverages, the parties dispute whether Slaney

---

1. *See* 28–A M.R.S.A. §§ 2501–2520 (1988 & Supp.1999). The exclusivity provision of the MLLA states that the MLLA "is the exclusive remedy against servers who may be made defendants ... for claims by those suffering damages based on the servers' service of liquor." 28–A M.R.S.A. § 2511 (1988).

served any drinks to Thibodeau. Slaney denied that the Captain Morgan's belonged to him and did not recall seeing Thibodeau consume any of it.[2] Slaney also testified that he was unaware of the fact that Thibodeau and his brother had consumed any alcohol before arriving at his home. According to Slaney, Thibodeau did not appear intoxicated and he did not smell alcohol on the breath of either his brother or Thibodeau. Slaney did testify, however, that when his brother and Thibodeau were together, there was a good chance that the consumption of alcohol would be involved in their activities.

[¶ 5] When Thibodeau climbed onto the roof to stain the peak of the house, he employed no safety equipment.[3] Using a spray gun, Thibodeau stained the area. Some of the stain apparently ended up on the roof, causing the shingles to become slippery. Because the spray gun could not reach far enough to stain the entire area, Thibodeau attempted to complete the staining using a brush. He then slipped on the wet shingles, fell and sustained numerous injuries.

[¶ 6] Thibodeau testified that if he was sober he probably would have used better judgment and balance or alternatively that he would not have attempted to paint the area of the house without the use of safety equipment.[4]

[¶ 7] After the close of the evidence, Slaney raised the MLLA for the first time, asserting that it barred Thibodeau's claim. However, Slaney also agreed to a verdict form that did not ask the jury to make any findings that would be essential to determine whether the MLLA in fact barred the claim.

[¶ 8] For comparative fault analysis, Thibodeau conceded that his personal consumption of alcohol was negligent, but the jury concluded that Slaney's negligence was greater. The jury determined that Thibodeau's damages totalled $230,261.37. It also determined that Thibodeau's negligence justified a reduction of the damages awarded to $97,261.37. *See Pomeroy v. Glidden,* 1997 ME 118, ¶ 4, 695 A.2d 1185, 1186, *Pelletier v. Fort Kent Golf Club,* 662 A.2d 220, 222–24 (Me.1995) (comparative fault damage awards need not be in proportion to the causative fault of the parties.).

[¶ 9] After the jury returned its verdict, the court entered a judgment on the verdict and set a schedule for both parties to present their arguments with respect to the motion for a judgment as a matter of law.[5] Slaney argued that Thibodeau's

---

2. Slaney testified that he did not provide the Captain Morgan's for the group's consumption, nor did he see Thibodeau consume any of it. Moreover, Slaney denied that the bottle belonged to him and claimed that his brother had taken the bottle out of his vehicle and provided it. Thibodeau, on the other hand, testified that the bottle of Captain Morgan's the three men passed around in the garage was provided by Slaney, and he believed the bottle was present before he and Slaney's brother arrived.

3. Based on the record, it appears Slaney left it to the discretion of his brother and Thibodeau to determine what equipment would be required to safely complete the task. Slaney was not present while the two men stained the house, including when Thibodeau went up onto the roof. Rather, he was inside the house working in one of the upstairs bedrooms.

4. Thibodeau had worked for a construction company and was familiar with the use of hook ladders, harnesses and jacks when one was working higher than six feet off of the ground. He testified that although it was within his discretion to use such safety equipment when he worked for that company, he always used it.

5. M.R. Civ. P. 50(b) governs motions for judgment as a matter of law after the case is sent to the jury and provides as follows:

Whenever a motion for judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed in open court or by service and filing not later than 10 days after entry of

claim was subject to the exclusivity provision of the MLLA because the facts presented by Thibodeau at trial indicated that the consumption and service of alcohol was the focus of his claim. Thibodeau responded and asserted that Slaney's negligence in failing to supply safety equipment was the cause of his injuries, not the service of alcohol. Thibodeau also argued that there was evidence at trial that Slaney had not served him any alcohol at all, thereby removing the case from the scope of the MLLA.

[¶ 10] The court concluded that Thibodeau had in fact framed his case in a manner that made it subject to the MLLA. While the court had not asked the jury to make special findings on the MLLA issue, the court determined that Slaney was a server and that the central cause of the accident was Thibodeau's intoxication. After making this determination, the court dismissed the case for lack of subject matter jurisdiction pursuant to M.R. Civ. P. 12(h)(3).[6] Thibodeau appealed from that order.

## II. DISCUSSION

■ [¶ 11] When we review the grant of a 50(b) motion for a judgment as a matter of law, we "examine the jury's verdict to 'determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury's verdict." ' *Maine Energy Recovery Co. v. United Steel Structures, Inc.,* 1999 ME 31, ¶ 6, 724 A.2d 1248, 1250 (quoting *Townsend v. Chute Chemical Co.,* 1997 ME 46, ¶ 8, 691 A.2d 199, 202). We have recently stated that:

> judgment. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law. If no verdict was returned the court may direct the entry of judgment as a matter of law or may order a new trial.

**6.** Although the court's order granted Thibodeau leave to file a complaint within the scope of the MLLA, this was in reality a grant

In reviewing a trial court's disposition of a motion for a judgment as a matter of law, we view the evidence together with all justifiable inferences in the light most favorable to the party opposing the motion. The motion should not be granted if any reasonable view of the evidence could sustain a verdict for the opposing party.

*Id.* (quoting *Lewis v. Knowlton,* 1997 ME 12, ¶ 6, 688 A.2d 912, 913) (internal quotations omitted).

[¶ 12] The exclusivity provision of the MLLA provides that the MLLA "is the exclusive remedy against *servers* [7] who may be made defendants ... for claims by those suffering damages based on the *servers'* service of liquor." 28–A M.R.S.A. § 2511 (1988) (emphasis added). Thibodeau contends that his injuries did not result from Slaney negligently serving him alcohol, but rather from Slaney's negligently allowing him to go onto the roof while intoxicated and without safety equipment adequate to complete the task at hand.

[¶ 13] In *Jackson v. Tedd–Lait Post No. 75, American Legion,* 1999 ME 26, ¶¶ 8–9, 723 A.2d 1220, 1221–22, we stated that the MLLA applies where the service of liquor is at "the very center of creating the special relationship, dangerous situation or unreasonable risk." In *Jackson,* the bartender had asked the intoxicated customer, to whom she had served liquor, to leave. *See id.,* ¶ 2, 723 A.2d at 1220. Although the customer asked the bartender to arrange transportation for him, she refused. *See id.* As the customer stood on a near-

of no right at all because the MLLA specifically provides that an intoxicated individual may not bring suit against a server for negligently serving liquor if the individual is at least 18 years old at the time of the service. *See* 28–A M.R.S.A. § 2504(2)(A) (1988).

**7.** Section 2503(5), defines a server as "a person who sells, gives or otherwise provides liquor to an individual." 28–A M.R.S.A. § 2503(5) (1988).

by sidewalk, he was struck by a vehicle. *See id.,* ¶ 3, 723 A.2d at 1220. The customer then sued contending that the bartender's conduct ordering him to leave the premises and refusing to arrange transportation for him constituted negligence. *See id.,* ¶ 6, 723 A.2d at 1221. Based on that set of facts, we indicated that there was no special relationship between the Legion and the customer except the one created by its service of alcohol. *See id.,* ¶ 8, 723 A.2d at 1221.

[¶ 14] In the present case, the relationship between Slaney and Thibodeau centered on staining the house, not on serving alcoholic beverages. While the jury was not asked to make any finding on the issue, it certainly could have concluded that the consumption of alcohol, if germane to the relationship at all, was at best secondary. The jury also could have found that Slaney served no alcoholic beverages

to Thibodeau. Thus, the present case is distinguishable from *Jackson,* where the only real link between plaintiff and defendant was the service of alcohol.

[¶ 15] The MLLA governs actions where a plaintiff alleges that a defendant negligently served the plaintiff alcoholic beverages, proximately causing plaintiff's intoxication and subsequent injury for which plaintiff seeks damages. It addresses claims "based on the servers' service of liquor." 28–A M.R.S.A. §§ 2504, 2511 (1988).

■ [¶ 16] The MLLA remedies for adults provide a significant narrowing of common law tort liability by: (i) requiring notice within 180 days,[8] compared to the normal six-year statute of limitations;[9] (ii) imposing a recklessness standard for liability, in lieu of the usual negligence standard;[10] and (iii) placing a $250,000 cap on

---

8. 28–A M.R.S.A. § 2513 (1988) sets forth the notice requirement in a MLLA action and states:

> **§ 2513. Notice required**
> Every plaintiff seeking damages under this Act must give written notice to all defendants within 180 days of the date of the server's conduct creating liability under this Act. The notice must specify the time, place and circumstances of the server's conduct creating liability under this Act and the time, place and circumstances of any resulting damages. No error or omission in the notice voids the effect of the notice, if otherwise valid, unless the error or omission is substantially material. Failure to give written notice within the time specified is grounds for dismissal of a claim, unless the plaintiff provides written notice within the limits of section 2514 and shows good cause why notice could not have reasonably been filed within the 180–day limit.

9. 14 M.R.S.A. § 752 (1980).

10. 28–A M.R.S.A. § 2504(2) (1988) states:

> **2. Persons who may not bring suit.** The following may not bring an action under this Act against a server for negligently serving liquor to an individual:
> **A.** The intoxicated individual if he is at least 18 years of age when served by the server;
> **B.** The estate of the intoxicated individual if the intoxicated individual was at least

18 years of age when served by the server; and
> **C.** Any person asserting claims arising out of the personal injury or death of the intoxicated individual if the intoxicated individual was at least 18 years of age when served by the server.
> 28–A M.R.S.A. § 2507 (1988 & Supp.1999) states as follows:
> **§ 2507. Reckless service of liquor; liability**
> **1.** Reckless service to a minor. A server who recklessly provides liquor to a minor is liable for damages proximately caused by that minor's consumption of the liquor.
> **2.** Reckless service to a visibly intoxicated individual. A server who recklessly serves liquor to a visibly intoxicated individual is liable for damages proximately caused by that individual's consumption of the liquor.
> **3.** Reckless conduct. Service of liquor is reckless if a server intentionally serves liquor to an individual when the server knows that the individual being served is a minor or is visibly intoxicated and the server consciously disregards an obvious and substantial risk that serving liquor to that individual will cause physical harm to the drinker or to others.
> For purposes of this Act, the disregard of the risk, when viewed in light of the nature and purpose of the server's conduct and the circumstances known to the server, must involve a gross deviation from the standard

nonmedical damages, regardless of the severity of plaintiff's injury.[11] These restrictions suggest a statute narrowly focused on server fault in serving alcohol. Such statutes in derogation of the common law are to be narrowly construed. *See Emery Waterhouse Co. v. Lea,* 467 A.2d 986, 996 (Me.1983).

[¶ 17] The MLLA cannot be construed to bar every claim where actions by a defendant, other than serving alcohol, are alleged to have caused a plaintiff injury and there is evidence that during the course of their activities, the defendant happened to serve the plaintiff one or more alcoholic beverages. Such a construction would, in essence, be a license for individuals who have served other individuals alcohol to negligently injure those individuals as long as the service of alcoholic beverages does not rise to the MLLA standard of recklessness. The Legislature certainly did not intend such a license for negligence when it adopted the MLLA.

[¶ 18] At the same time, there is no question that the Legislature intended that the MLLA greatly restrict negligence claims regarding the actual service of alcoholic beverages. Thus, it should not be possible to avoid the MLLA by pleading around it, asserting that some act of negligence by a server, other than provision of alcoholic beverages to the plaintiff, was the cause of plaintiff's injury. In such circumstances, plaintiff's efforts to plead around the MLLA can be countered by a vigilant defense asserting the MLLA as a bar to plaintiff's claimed basis for recovery.

[¶ 19] Thus, when the injured party is an adult who was served by the defendant server, the MLLA can come before the court for determination in two ways. First, it can be asserted by a plaintiff as an affirmative basis for recovery on a claim that a defendant *recklessly* served the plaintiff alcohol, and such service of alcohol proximately caused plaintiff's injuries.

[¶ 20] Second, when a plaintiff asserts that injury was proximately caused by negligence of the server other than the service of alcoholic beverages, a defendant may assert the MLLA as an affirmative defense. *See* M.R. Civ. P. 8(c). In such a case, the defendant would contend that, if there was any negligence by the defendant which proximately caused plaintiff's injury, it was in the service of alcoholic beverages, not in the breach of some other duty. When the MLLA is asserted as an affirmative defense, the defendant would have the burden of proof to demonstrate that the plaintiff's injuries were caused by negligent service of alcohol, rather than some other cause asserted by the plaintiff. *See Merrill v. Sugarloaf Mountain Corp.,* 2000 ME 16, ¶ 12, 745 A.2d 378, 384. Because of the recklessness standard, a non-licensed server, successfully asserting that affirmative defense, would be excused from any negligence based liability for plaintiff's injuries.

---

of conduct that a reasonable and prudent person would observe in the same situation.

4. **Evidence of reckless conduct.** Specific serving practices that are admissible as evidence of reckless conduct include, but are not limited to, the following:

A. Active encouragement of intoxicated individuals to consume substantial amounts of liquor;

B. Service or liquor to an individual who is under 18 years of age when the server has actual or constructive knowledge of the individual's age; and

C. Service of liquor to an individual that is so continuous and excessive that it creates a substantial risk of death by alcohol poisoning.

11. 28–A M.R.S.A. § 2509(1) (1988) states:

1. **Limitation on damages for losses other than expenses for medical care and treatment.** In actions for damages permitted by this Act, the claim for and award of damages for all losses, except expenses for medical care and treatment, including devices or aids, against both a server and the server's employees and agents, may not exceed $250,000 for any and all claims arising out of a single accident or occurrence. Section 2509(1) has been addressed in *Peters v. Saft,* 597 A.2d 50 (Me.1991).

[¶ 21] In the instant case, neither approach was used to bring the MLLA claim before the factfinder. Thibodeau did not assert a MLLA claim as a basis for recovery, and Slaney did not raise the MLLA as an affirmative defense to Thibodeau's negligence claim. Instead, Slaney waited until the close of all of the evidence before even raising the liquor liability issue. Slaney then agreed to jury instructions and a jury verdict form that did not require the jury, as the factfinder, to make any findings specific to the MLLA issues.

[¶ 22] The asserted basis for Thibodeau's negligence claim was not service of alcohol, but rather allowing a person who had arrived at Slaney's home inebriated to go on his roof and attempt to stain the upper area of the exterior without adequate safety devices. After the adverse verdict, Slaney argued that because there was evidence he had served alcohol to Thibodeau, this evidence, although contradicted by Slaney's own testimony, was enough to bar the claim.

[¶ 23] The jury's verdict provides no indication as to whether the jury reached its comparative fault determinations based on the theory asserted by Thibodeau or based on a determination that Slaney's negligent service of alcohol caused Thibodeau's injury. Without such a finding on a MLLA affirmative defense, there was no basis for the trial court to infer that the jury found negligent service of alcohol to be the basis for liability and to consequently apply the MLLA to vacate the jury's verdict and grant judgment for the defendant. Slaney failed to preserve the MLLA issue in this case, as it was not asserted in a timely manner, and it was not subject to necessary factfinding by the jury.

[¶ 24] Slaney asserts that, regardless of the validity of the trial court's ruling on the MLLA, he is, in any event, entitled to a verdict because, as a matter of law, Thibodeau's going on the roof in an inebriated state was more negligent than any acts or omissions of Slaney in allowing Thibodeau to go on to his roof to stain his house without safety devices. Thus, Slaney asserts Thibodeau's claim is barred by the comparative fault law. *See* 14 M.R.S.A. § 156 (1980).

[¶ 25] It is not this Court's function to redecide facts in a case. The jury heard and observed the parties and fully evaluated the evidence. After that evaluation, the jury determined that, while both parties were negligent, Slaney's negligence was greater than Thibodeau's. While different factfinders might take different views of the facts of this case, the jury could have determined that Slaney was more negligent because: (i) he was aware that Thibodeau was inebriated; and (ii) with that knowledge he allowed Thibodeau to go on the roof to serve Slaney's interest in staining his house. With our limited and deferential review of factfindings by juries, we cannot say as a matter of law that the jury's finding on the comparative fault issue was clearly erroneous.

[¶ 26] Finally, Slaney asserts that the jury's verdict was improperly affected by the closing argument which suggested that if the jury did not award Thibodeau damages, the burden for payment of his medical expenses would fall upon the public and the taxpayers, inferentially including the jury.[12]

[¶ 27] Slaney's counsel made a timely objection to this argument which

12. The argument was as follows:
   MR. FERRIS: What this case is, what we're here trying to help Mr. Thibodeau do, is to find out who the heck is going to carry the tab for this. And does it make sense from a public policy standpoint for the taxpayers, for all of us—
   MR. MAIN: Your Honor, I object.
   MR. FERRIS:—to foot the bill.

   THE COURT: I sustain the objection, that's improper argument.
   MR. FERRIS: But that's what we have to do, we have to decide who is going to cover these bills. It's not a personal attack against the Slaneys. And the defense counsel will try to hammer this into your heads, but it's not true. . . .

was sustained by the court. The court then stated that the argument was improper. Apparently satisfied with the court's corrective action, Slaney's counsel did not request any further statement from the court and did not request a mistrial. Accordingly, we must review the trial court's failure to take further corrective action or declare a mistrial only for obvious error affecting substantial rights. *See State v. Quirion,* 2000 ME 103, ¶ 25, 752 A.2d 170; *State v. Boone,* 563 A.2d 374, 377 (Me. 1989), *State v. Hinds,* 485 A.2d 231, 237 (Me.1984).

[¶ 28] Here, Slaney's objection to the improper argument was sustained and the jury was advised that the argument was improper. In the general instructions, the jury was instructed to disregard any matters subject to sustained objections. We presume that a jury will follow a curative instruction, and such an instruction will be considered adequate, absent exceptionally prejudicial circumstances or bad faith. *See State v. Chasse,* 2000 ME 90, ¶ 13, 750 A.2d 586; *State v. Naoum,* 548 A.2d 120, 123 (Me.1988); *State v. Hilton,* 431 A.2d 1296, 1302 (Me.1981). Because we presume that the jury disregarded the improper argument, there can be no obvious error in the court's not taking further corrective action beyond that requested by Slaney.

[¶ 29] Accordingly, Slaney's MLLA claim and each of Slaney's claims of error fail.

The entry is:

Judgment vacated. Remanded to the Superior Court with direction to reinstate the judgment entered based on the jury's verdict.