2011 ME 90

**Paul C. DAVIS**

v.

**Scott DIONNE et al.**

Supreme Judicial Court of Maine.

Argued: June 14, 2011.

Decided: Aug. 18, 2011.

---

C. Donald Briggs, III, Esq. (orally), Briggs & Counsel, LLC, Rockport, ME, for Paul C. Davis.

Paul Catsos, Esq. (orally), Jason P. Donovan, Esq., Thompson & Bowie, LLP, Portland, ME, for Scott Dionne and Brockway–Smith Company.

Thomas S. Marjerison, Esq., Matthew T. Mehalic, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, ME, for David Webb and John T. Cyr & Sons, Inc.

Panel: SAUFLEY, C.J., and ALEXANDER,* LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1]   Paul C. Davis was struck and seriously injured by defendant Edwin Rodriguez.  Rodriguez was driving while intoxicated soon after he and Davis exited a chartered bus at the conclusion of a business promotion trip.  Davis appeals from a grant of summary judgment entered in the Superior Court (Penobscot County, *Anderson, J.*) in favor of the business that organized the trip, its employee, the chartered bus company, and its employee.  We affirm.

---

* Although not available at oral argument, Justice Alexander participated in this opinion. *See* M.R.App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

## I.  BACKGROUND

[¶ 2]   The parties do not dispute the majority of the following facts, which we view in the light most favorable to Davis as the nonmoving party and which are established in the summary judgment record. *See Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733, 738.  Scott Dionne, an employee of Brockway–Smith Co., organized a fishing charter and dinner trip to Bar Harbor to promote Brockway's business relationship with Crescent Lumber and its millwork contractors.  Crescent Lumber chartered a bus with John T. Cyr & Sons, Inc., d/b/a Cyr Bus Line, to provide transportation, and later Brockway reimbursed Crescent Lumber for the bus expense.  David Webb was the Cyr employee who drove the bus.

[¶ 3]   The trip took place on August 19, 2006, and began and ended as planned at the Orrington parking lot of Crescent Lumber, Davis's employer.  In advance of the bus trip, Dionne bought four or five cases of beer and a gallon of rum for participants to consume during the trip.  Dionne was aware that Rodriguez drank rum on the way to Bar Harbor.  Rodriguez was loud and obnoxious throughout the day and consumed alcohol on the fishing boat and at the Bar Harbor restaurant where the group dined after the fishing excursion.

[¶ 4]   Neither Webb nor Cyr supplied any alcohol to the bus passengers during the trip.  Cyr's invoice stated: "Consumption of alcoholic beverages and unlawful narcotics by passengers is prohibited on buses."  The parties dispute whether Webb knew or should have known that bus passengers were consuming alcohol on the bus.  Webb did not accompany the partici-

pants on the fishing boat, but he did accompany them to the restaurant.

[¶ 5] On the return trip there was a scuffle involving Rodriguez, and the parties dispute whether racial epithets were shouted at Rodriguez. When the bus reached the Crescent Lumber parking lot, Rodriguez exited the bus and went to his truck. The parties dispute how much time elapsed between Rodriguez's exit from the bus and his attempt to drive out of the parking lot, but it is undisputed that some of the trip participants approached Rodriguez's truck in a threatening manner during this period. Soon after Rodriguez started to drive his truck, he struck and seriously injured Davis. Rodriguez later pleaded guilty to reckless endangerment, aggravated assault, and OUI.

[¶ 6] Davis's claims under the Maine Liquor Liability Act (MLLA), 28–A M.R.S. §§ 2501–2520 (2006) [1] were dismissed because they were untimely. See 28–A M.R.S. § 2513. Davis does not appeal that decision. His remaining claims against Cyr, Webb, Brockway, and Dionne are for common law negligence.

## II. DISCUSSION

[¶ 7] The MLLA is "the exclusive remedy against servers who may be made defendants under section 2505, for claims by those suffering damages based on the servers' service of liquor." 28–A M.R.S. § 2511; see 28–A M.R.S. § 2505. The statute is broad, including as a "server" any "person who sells, gives or otherwise provides liquor to an individual," pursuant to 28–A M.R.S. § 2503(5), and making both "licensee" and "nonlicensee" servers subject to liability for negligent or reckless service of liquor, pursuant to 28–A M.R.S.

§§ 2503(3), (4), 2505–2507. The MLLA provides a relatively brief statute of limitations of two years, 28–A M.R.S. § 2514, and a very brief notice period of 180 days, 28–A M.R.S. § 2513. Because Davis failed to provide timely notice of his claim pursuant to section 2513, he has no claim under the MLLA against Dionne or Brockway. In order to obtain relief from the exclusivity provision in section 2511, Davis must show some relationship between himself and these defendants—separate from the relationship created by their furnishing of alcohol—that would support a claim of negligence. See Thibodeau v. Slaney, 2000 ME 116, ¶¶ 13–14, 755 A.2d 1051, 1054–55.

[¶ 8] As the court noted, Webb and Cyr were not servers or furnishers of alcohol, so the exclusivity provision does not apply to Davis's claims against them. Nonetheless, in order to survive summary judgment on his claims for common law negligence against each of these defendants, Davis "must establish a prima facie case for each element of his negligence cause of action: a duty owed, a breach of that duty, and an injury that is proximately caused by a breach of that duty." Belyea v. Shiretown Motor Inn, LP, 2010 ME 75, ¶ 6, 2 A.3d 276, 278 (quotation marks and alteration omitted). The sole issue on appeal is whether Cyr, Webb, Brockway, or Dionne owed Davis a common law duty of care. This is a question of law that we review de novo. See id.

### A. Cyr's and Webb's duty

[¶ 9] Davis agrees that the duty of Cyr and Webb is determined by Cyr's status as a common carrier. Davis argues that Cyr had a duty as a common carrier to either remove Rodriguez from the bus

---

1. Title 28–A M.R.S. §§ 2501–2520 (2006) has since been amended, but not in any way that affects this appeal. P.L.2009, ch. 247, § 1 (effective Sept. 12, 2009) (codified at 28–A M.R.S. §§ 2501–2520 (2010)).

or prevent him from driving his own vehicle after he exited the bus.

[¶ 10] "Duty involves the question of whether the defendant is under any obligation for the benefit of the particular plaintiff." *Jackson v. Tedd–Lait Post No. 75, Am. Legion,* 1999 ME 26, ¶ 7, 723 A.2d 1220, 1221 (quotation marks omitted). The duty of a common carrier is to exercise "the highest degree of care compatible with the practical operation of the machine in which the conveyance was undertaken." *Mastriano v. Blyer,* 2001 ME 134, ¶ 13, 779 A.2d 951, 954 (quotation marks omitted). "This heightened standard of care continues until the carrier has given its passenger a reasonably safe discharge at a reasonably safe location." *Id.* Webb drove the bus without incident. The parties determined in advance of the trip that the discharge would be at the Crescent Lumber parking lot and Davis presents no evidence that there was anything unsafe about the discharge location itself.

[¶ 11] Davis argues that the discharge of passengers in the parking lot was rendered unsafe because Rodriguez had been drinking and it was reasonably foreseeable that he would drive his vehicle after he exited the bus. Davis asks us to impose a duty on Cyr and Webb to ensure Davis's safety by preventing Rodriguez from driving his truck after the bus trip ended. However, we have declined to extend the duty of a common carrier "to include an *in loco parentis* type of responsibility to intervene in an arguably intoxicated passenger's life, perhaps against the passenger's wishes, to ensure that the passenger does not harm himself or herself after the common carrier has given the safe exit that the law requires." *Id.* ¶ 14, 779 A.2d at 954; *see also Knoud v. Galante,* 696 A.2d 854, 857–59 (Pa.Super.Ct.1997). Likewise, we decline to extend the duty to include the protection of one passenger from another after the common carrier has provided a safe exit for both. *See Mastriano,* 2001 ME 134, ¶ 14, 779 A.2d at 954.

[¶ 12] Davis also argues that Cyr and Webb had a duty arising from Cyr's statement on its invoice that "[c]onsumption of alcoholic beverages and unlawful narcotics by passengers is prohibited on buses." Cyr's invoice statement does not alter the duty of Cyr or Webb; the standard of care applicable to these defendants is that of a common carrier.

### B. Brockway's and Dionne's duty

[¶ 13] Davis argues that Brockway and Dionne breached a duty to comply with the Cyr invoice statement when Dionne bought alcohol before the excursion. Any duty not to purchase alcohol arising from the Cyr invoice statement would be inextricably linked to the service of alcohol and would therefore trigger the MLLA's exclusivity provision pursuant to 28–A M.R.S. § 2511. *See Jackson,* 1999 ME 26, ¶ 9, 723 A.2d at 1221–22. Because Davis's MLLA claims were dismissed, he has no viable claim against Brockway or Dionne based on Dionne's purchase of alcohol for the trip.

[¶ 14] Davis also argues that Brockway and Dionne had a special relationship with Davis and a fiduciary duty to him because Dionne organized and led the excursion. "[T]he general rule is that an actor has no duty to protect others from harm caused by third parties." *Fortin v. Roman Catholic Bishop of Portland,* 2005 ME 57, ¶ 25, 871 A.2d 1208, 1217. We have recognized an exception "only in circumstances where the law will recognize both the disparate positions of the parties and a reasonable basis for the placement of trust and confidence in the superior party in the context of specific events at issue." *Id.* ¶ 26, 871 A.2d at 1218 (quotation marks omitted). We decline to recog-

nize a generalized fiduciary duty on the part of one who organizes and leads a trip to protect trip participants from one another and do not reach the issue as to whether some other factual scenario may give rise to a special relationship or a fiduciary duty on the part of a trip organizer or trip leader. *See Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.,* 1999 ME 144, ¶¶ 23–24, 738 A.2d 839, 847 (declining to recognize "a generalized fiduciary duty on the part of [a] church to protect members of its congregation from other members").

The entry is:

Judgment affirmed.