2012 ME 103

**LOUGEE CONSERVANCY et al.**

v.

**CITIMORTGAGE, INC. et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 11, 2012.
Decided: Aug. 2, 2012.

Michael A. Cunniff, Esq. (orally), and Shaun M. Garry, Esq., McCloskey, Mina & Cunniff, LLC, Portland, for appellants The Lougee Conservancy, Eleanor Lougee Chapin, David Lougee, and Arther James Lougee.

Mark E. Porada, Esq. (orally), Pierce Atwood LLP, Portland, for appellees Shelley Alley and David Alley.

Christopher P. Silva, Esq. (orally), Edwards Angell Palmer & Dodge LLP, Boston, Massachusetts, for appellee Citimortgage, Inc.

Michael D. Traister, Esq., and Nicole L. Bradick, Esq., Murray, Plumb & Murray, Portland, for appellee Safeguard Properties, LLC.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1]  The Lougee Conservancy; Eleanor Lougee Chapin, as trustee and beneficiary of the Lougee Conservancy; David Lougee, as trustee and beneficiary of the Lougee Conservancy; and Arthur "Jim" Lougee, as beneficiary of the Lougee Conservancy (collectively, the Lougees) appeal from a summary judgment entered in the Superior Court (York County, *Fritzsche, J.*).  The court granted summary judgment in favor of CitiMortgage, Inc. on the Lougees' complaint for common law and statutory trespass, invasion of privacy, conversion, intentional infliction of emotional distress, punitive damages, and negligence, and in favor of Safeguard Properties, LLC, and David and Shelly Alley, d/b/a D & S Properties, LLC, on all claims except common law and statutory trespass.  The Lougees' claims arose when an unencumbered home and barn owned by the Lougee Conservancy were entered and secured as part of CitiMortgage's foreclosure action that pertained to a neighboring property.  We affirm the judgment on the claims for invasion of privacy, conversion, intentional infliction of emotional distress, and punitive damages, and vacate on the claim of negligence as to all three defendants.

## I.  BACKGROUND

[¶ 2]  We review the facts found in the summary judgment record in the light most favorable to the plaintiffs as the nonmoving party. *See Davis v. Dionne*, 2011 ME 90, ¶ 2, 26 A.3d 801.

[¶ 3] The Lougee Conservancy is an irrevocable trust that holds legal title to 593 acres of land along North Road in Parsonsfield. Eleanor Lougee Chapin, Jim Lougee, and David Lougee are beneficiaries of the trust, and Eleanor and David are trustees. The Conservancy was created by the Lougees' parents in 1964 to conserve and maintain the property for the benefit of the Lougee family. The property includes a house (the Homestead) and a barn. Since the Lougees' father died in 2005 the Homestead has served as a storage place for family heirlooms and for personal items that belonged to the Lougees' parents. The property also stores some personal possessions of the individual Lougees. Jim lives on the Conservancy property in a separate home about 500 feet from the Homestead.

[¶ 4] In December 2008, CitiMortgage began a foreclosure action against a property located four miles from the Homestead on North Road (North Road property). In August 2008 the mortgage on the North Road property reached a certain delinquency threshold, triggering CitiMortgage to issue an order to Safeguard, CitiMortgage's property preservation services provider, to determine whether the home was vacant or abandoned. Safeguard, through various subcontractors, periodically checked on the North Road property and reported to CitiMortgage. In February 2009 Safeguard determined that the North Road property had been abandoned and reported this to CitiMortgage.

[¶ 5] Safeguard issued an order to secure and winterize the North Road property and assigned the job to one of its subcontractors, D & S Properties. D & S was to confirm that the North Road property was vacant and, if so, secure it. Safeguard provided D & S with the correct address of the North Road property to complete this task, but D & S was unsure as to which house on North Road was the correct house. The electronic navigation system used by D & S brought them to the Conservancy property in the vicinity of the Homestead. Many homes on the street, including the Homestead, lacked street numbers; a neighbor could not confirm the correct address; and the Homestead had been winterized, and its driveway was not plowed. D & S sent digital pictures of the Homestead and another nearby house— not the North Road property—to Safeguard requesting verification of which was the correct house. Although a Safeguard employee responded by stating that Safeguard's inspector had the same photographs as D & S, so she could not determine which was the right house, D & S believed Safeguard had confirmed that the Homestead was the correct house.

[¶ 6] Despite the hundreds of "No Trespassing" signs posted on the Conservancy property, D & S entered the Homestead on March 24, 2009. D & S examined, inventoried, and photographed the contents of the home. While doing so, D & S emptied shelves and cupboards and moved items around. The parties dispute whether D & S damaged a door, a doorframe, and an antique desk that belonged to Maine's first governor. D & S secured the Homestead by putting a code-entry lockbox on the side door. D & S also entered the barn on the Conservancy property by prying open a door. In doing so D & S broke the lock on the door. The parties dispute whether this caused damage to an interior wall. D & S searched, inventoried, and photographed the barn's interior. Upon leaving, D & S placed a board across the door but did not otherwise protect it from entry. The Lougees have not alleged that D & S removed any items from either the Homestead or the barn.

[¶ 7]   Eight days later, on April 2, 2009, Jim discovered the lock on the Homestead door, which prevented him from entering. The parties dispute whether Jim could have gained immediate access through another door to the home.   Jim called Eleanor, who called a deputy sheriff.   The deputy arrived at the Homestead and called Safeguard, per a sticker D & S posted near the lockbox with Safeguard's contact information.   Safeguard notified D & S, and D & S then gave the deputy the access code for the lockbox.   Jim and the deputy were able to enter the home immediately.   Jim observed that the contents of the home were in disarray.   D & S returned to the Homestead on the same day to change the lock on the Homestead and replace the lock on the barn.   Jim did not report any items broken or stolen to D & S or the deputy at that time.

[¶ 8]   As a direct result of this incident, Jim was left upset and anxious and obtained counseling for ten months.   The Lougees allege that his existing anxiety-related mental health conditions have been exacerbated.   Eleanor feels anxious, defeated, resistant to going to the Homestead, discouraged, offended, disgusted, and as though the Homestead has been "dirtied."   David feels outraged, violated, and "greatly upset."   His "sense of security and isolation at the Homestead" has been "destroyed."

[¶ 9]   The Lougees brought suit against CitiMortgage, Safeguard, and D & S in the Superior Court as individual beneficiaries and trustees of the Lougee Conservancy, claiming (1) common law trespass, (2) statutory trespass pursuant to 14 M.R.S. § 7551–B (2011), (3) invasion of privacy, (4) conversion, (5) intentional infliction of emotional distress, (6) punitive damages, and (7) negligence.   D & S and Safeguard

filed cross-claims against each other for common law indemnification, and D & S filed a cross-claim against Safeguard for common law contribution.   CitiMortgage moved for summary judgment on all counts on the basis that it was not vicariously liable for the actions of Safeguard or D & S. Safeguard also moved for summary judgment on all counts.   D & S moved for summary judgment on all counts except statutory and common law trespass.   Safeguard also sought a summary judgment on D & S's cross-claim for common law indemnification.

[¶ 10]   The court granted a summary judgment in favor of CitiMortgage on all of the claims.   The court denied Safeguard's motion as to statutory and common law trespass, but granted its motion as to invasion of privacy, conversion, intentional infliction of emotional distress, punitive damages, and negligence.   The court granted D & S's motion as to invasion of privacy, conversion, intentional infliction of emotional distress, punitive damages, and negligence.   The court denied Safeguard's motion for summary judgment on the cross-claim against D & S. Only the statutory and common law trespass claims against Safeguard and D & S now remain for trial.   Pursuant to M.R. Civ. P. 54(b)(1), the court certified the summary judgments on the five claims as final to allow the Lougees to pursue this interlocutory appeal.[1]

## II.   DISCUSSION

### A.   Summary Judgment Standard

[¶ 11]   We review a summary judgment de novo.   *Stewart–Dore v. Webber Hosp. Ass'n,* 2011 ME 26, ¶ 8, 13 A.3d 773.   We view the evidence in the light most favorable to the party against whom judgment has been granted to determine

---

1.   We do not find any error in the court's certification pursuant to M.R. Civ. P. 54(b)(1), and therefore need not discuss the issue further.

whether the record reveals a genuine issue of material fact on any claim. *Id.* "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Id.* (quotation marks omitted). "When facts, though undisputed, are capable of supporting conflicting yet plausible inferences—inferences that are capable of leading a rational fact-finder to different outcomes in a litigated matter depending on which of them the fact-finder draws—then the choice between those inferences is not for the court on summary judgment." *See F.R. Carroll, Inc. v. TD Bank, N.A.,* 2010 ME 115, ¶ 8, 8 A.3d 646 (quotation marks and alterations omitted).

[¶ 12] "To survive a defendant's motion for a summary judgment, the plaintiff must establish a prima facie case for each element of her cause of action." *Bonin v. Crepeau,* 2005 ME 59, ¶ 8, 873 A.2d 346 (quotation marks omitted). The prima facie evidence standard addresses "the preliminary burden of production of evidence; it requires proof only of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Nader v. Me. Democratic Party,* 2012 ME 57, ¶ 34, 41 A.3d 551. "If the plaintiff presents insufficient evidence on an essential element in her cause of action, such that the defendant would be entitled to judgment as a matter of law on that state of the evidence at a trial, the defendant is entitled to a summary judgment." *Bonin,* 2005 ME 59, ¶ 8, 873 A.2d 346. (quotation marks and alterations omitted).

### B. Agency

[¶ 13] CitiMortgage moved for summary judgment on all counts on the basis that it is not vicariously liable for the acts of Safeguard or D & S. Although the Lougees alleged in their complaint to the Superior Court and in their appeal to us that Safeguard is an *agent* of CitiMortgage, the defendants argued that, and therefore the court focused on whether, Safeguard and D & S are independent contractors of CitiMortgage, such that CitiMortgage would not be liable for their actions. *See Legassie. v. Bangor Publ'g Co.,* 1999 ME 180, ¶ 5, 741 A.2d 442 ("Generally, an employer may be vicariously liable for the negligence of its employees, but not for the negligence of independent contractors."). However, a determination that one party is an independent contractor of another is not necessarily dispositive on the question whether that party has been retained to act as an agent of another party; a principal can be held liable for the acts of an independent contractor if the principal controls the contractor's performance, thereby making the contractor an agent of the principal. *See Baker Bus Serv., Inc. v. Keith,* 416 A.2d 727, 730–31 n. 2 (Me.1980). At this stage then, the proper inquiry is whether the Lougees have presented prima facie evidence of the agency relationship that they have alleged. To survive summary judgment on this claim, the Lougees must present evidence that (1) Safeguard was authorized to act for CitiMortgage, (2) Safeguard consented to so act, and (3) there existed an understanding that CitiMortgage was to exert control over Safeguard's actions. *See State Farm Mut. Auto. Ins. Co. v. Koshy,* 2010 ME 44, ¶ 16, 995 A.2d 651.

[¶ 14] The summary judgment record demonstrates that the Lougees did present admissible evidence to satisfy each element of agency. First, the record shows that Safeguard is authorized to inspect and secure foreclosed homes on behalf of CitiMortgage per their Master Services Agreement. Second, again per the Master Services Agreement, the record shows that Safeguard has consented to undertake this

work. Finally, the record shows that Citi-Mortgage exerts some level of control over how Safeguard is to carry out the work delegated to it. This is work that Citi-Mortgage alone is authorized to do pursuant to the mortgage agreement on the North Road property. The mortgage states that if the mortgagee abandons the property, *"Lender* may do and pay for whatever is necessary to protect the value of the Property and the Lender's right in the Property," which specifically includes securing the property. The Master Services Agreement describes specific tasks that Safeguard or its subcontractors must perform, and CitiMortgage supervises Safeguard's work and the quality of its work through a "Score Cards" system, work updates, and memos.

[¶ 15] The Lougees have met their burden of proffering prima facie evidence that Safeguard was acting as CitiMortgage's agent. The undisputed facts do not establish that Safeguard was an independent contractor so removed from CitiMortgage's control as to entitle CitiMortgage to summary judgment on this issue. Rather, they support competing inferences as to the extent of CitiMortgage's control of Safeguard, which preclude the entry of a summary judgment in either party's favor. *See F.R. Carroll, Inc. v. TD Bank, N.A.,* 2010 ME 115, ¶ 8, 8 A.3d 646.

## C. Invasion of Privacy

[¶ 16] To survive summary judgment on this claim, the Lougees must present evidence of an (1) intentional, (2) physical intrusion (3) upon premises occupied privately by a plaintiff for purposes of seclusion, and (4) the intrusion must be highly offensive to a reasonable person. *Nelson v. Me. Times,* 373 A.2d 1221, 1223 (Me.1977) (interpreting Restatement (Second) of Torts § 652B (1977)). The parties have agreed that the Conservancy cannot maintain a claim for invasion of privacy, so the Lougees attempt to pursue it as individual beneficiaries of the trust.

[¶ 17] Safeguard and D & S argue that the individual Lougees cannot maintain this claim because they do not "occupy" the Homestead in a manner that would give rise to an expectation of privacy. As a matter of law, however, the Lougees hold equitable title to the Conservancy property as beneficiaries of the trust. *See Rose v. Osborne,* 133 Me. 497, 501, 180 A. 315 (1935) (stating that a duly-executed voluntary trust confers "actual, beneficial or equitable title" to the beneficiary) (quotation marks omitted); *Norway Sav. Bank v. Merriam,* 88 Me. 146, 150, 33 A. 840 (1895) ("The creation of a trust is but the gift of the equitable interest."); *see generally* 5 Richard R. Powell, Powell on Real Property ¶ 513[3] (Michael A. Wolf, ed., 2000). Equitable title confers to the Lougees an ownership interest in any property owned by the trust. *See* 2 Austin W. Scott & William F. Fratcher, *Scott on Trusts* § 130 (4th ed. 1987) ("The beneficiary of a trust has a property interest in the subject matter of the trust. He has a form of ownership."); *see also Colquhoun v. Webber,* 684 A.2d 405, 409–10 (Me.1996) (discussing and adopting comment C to Restatement (Second) of Torts § 624 (1977), which notes that equitable interests are legally-protected interests in land). Although the parties have disputed the nature of the Lougees' ownership interests in the Conservancy property, it is undisputed that the trust holds title to the Homestead, barn, and the property stored therein, with the exceptions of the few items owned by the individual Lougees in their personal capacities.

[¶ 18] Therefore, the Lougees have an ownership interest in the buildings and their contents, and this claim does not fail merely because none of the

individual Lougees lived in the Homestead. An individual is not required to own or live on a premises to be considered its "occupant" or to maintain an expectation of privacy within it. *See Knight v. Penobscot Bay Med. Ctr.*, 420 A.2d 915, 917–18 (Me. 1980) (discussing a mother's personal privacy interest in a delivery room at a hospital); *Estate of Berthiaume v. Pratt*, 365 A.2d 792, 795 (Me.1976) (holding that it is a violation of privacy to photograph a patient in his hospital room without his consent); *see also, e.g., United States v. Lyons*, 898 F.2d 210, 212–13 (1st Cir.1990) (noting that, for purposes of the Fourth Amendment, placing items in a storage unit manifests a desire to keep them from the public, which gives rise to an expectation of privacy). To hold otherwise would negate the valid expectation of privacy that renters have in their rental homes, or that property owners maintain in seasonal residences even when they are not currently living in them. In these situations, the physical occupancy necessary to maintain a claim for invasion of privacy can be established by virtue of private, personal possessions rather than physical presence because the owner maintains a personal privacy interest in the possessions even when not physically present. *See* Restatement (Second) of Torts § 652B cmt. b (1977) (stating that "investigation or examination into [an individual's] private concerns, as by opening his private and personal mail, searching his safe or his wallet, [or] examining his private bank account" constitutes an invasion of privacy). This is the type of occupancy the Lougees have established in the Homestead and barn.

[¶ 19] The remaining question is whether D & S acted with the requisite intent. In the context of a claim for invasion of privacy, "the defendant must *intend* as the result of his conduct that there be an intrusion upon another's solitude or seclusion." *Knight*, 420 A.2d at 918. The Lougees and D & S agree that D & S understood Safeguard to have confirmed that the photograph D & S submitted of the Homestead was of the correct house. Despite that accepted fact, the record also shows that Safeguard advised D & S that it could not determine which house was the correct one. Whether D & S believed that it was entering the correct house is a dispute of material fact related to the element of intentionality that must be determined by the fact-finder. However, even if that dispute were resolved in favor of the Lougees and it was established that D & S was uncertain that it was entering the correct house, that finding would not be sufficient to allow a fact-finder to determine that D & S entered the Homestead intending to intrude on anyone's privacy. Even if D & S was uncertain as to whether it was entering the correct house, its intention was to enter the correct house. D & S might have been negligent or even reckless, but there is no evidence to support a finding of intentionality.

[¶ 20] Therefore, summary judgment was proper because the Lougees failed to establish a prima facie case as to the intentionality element of this claim.

### D. Conversion

[¶ 21] To survive summary judgment on this claim, the Lougees must present evidence of a property interest in and the right to possession of the goods at the time of the alleged conversion.[2] *See*

---

2. The parties do not assert that D & S, Safeguard, or CitiMortgage had rightful possession of the goods, so the Lougees are not required to show that they made a demand for return of the goods. *See Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798 (stating that "the person with the right to possession

*Withers v. Hackett,* 1998 ME 164, ¶ 7, 714 A.2d 798. The Lougees have established a prima facie case of both an interest in and a right to the goods. However, as a matter of law, the facts of this case do not establish an interference with the Lougees' interests and rights that is serious enough to constitute conversion.

[¶ 22] The crux of a claim for conversion is that the plaintiff's interest in and right to his own property have been, in fact, seriously interfered with. *See* Restatement (Second) of Torts § 222A (1965); *Withers,* 1998 ME 164, ¶ 7, 714 A.2d 798; *see also Ne. Bank of Lewiston & Auburn v. Murphy,* 512 A.2d 344, 347 (Me.1986) (stating that conversion requires an intent to exercise dominion that "in fact" seriously interferes with the owner's rights). This is necessarily a fact-specific inquiry and a question of degree. *See* Simmons, Zillman & Gregory, *Maine Tort Law* §§ 6.05–6.06 at 6–13, 6–16 to 6–18 (2004 ed.); W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 15 (5th ed.1984). To determine whether an interference is sufficiently serious as to amount to conversion, the court should consider the extent and duration of the actor's exercise of dominion or control; the actor's good faith; the extent and duration of the resulting interference with the other's right to control; the harm done; and the inconvenience and expense caused to the owner. Restatement (Second) of Torts § 222A; W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 15. Simply put, conversion requires an actual interference with the property owner's rights beyond a brief and ultimately-harmless withholding. *See generally* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 15 (distinguishing conversion from trespass based on the serious-

ness of the interference with the owner's rights).

[¶ 23] Here, the undisputed facts establish that D & S acted in good faith by intending to secure a property that it had been instructed and authorized to secure. It provided the access code to the lockbox immediately upon notification of the error. Jim was able to gain entry to the Homestead within a matter of hours. *Cf. Reardon v. Lovely Dev., Inc.,* 2004 ME 74, ¶¶ 3, 9, 852 A.2d 66 (stating that the plaintiff is entitled to damages for conversion for the eight months he was deprived of the use of his property); *Chiappetta v. LeBlond,* 505 A.2d 783, 784–86 (Me.1986) (vacating a directed verdict against the plaintiff on a claim for conversion where the plaintiff was deprived of the use of his property for thirteen months); *Donnell v. Canadian Pac. Ry. Co.,* 109 Me. 500, 503–04, 84 A. 1002 (1912) (noting that interfering with the plaintiff's rights for only "a few minutes" could amount to conversion where entry is immediately necessary, as in the case of a fire). The damage alleged is minimal and reparable. *Cf. Mitchell v. Allstate Ins. Co.,* 2011 ME 133, ¶¶ 2, 19–20, 36 A.3d 876 (holding that a claim for conversion could stand where the plaintiff's lobster traps were "destroyed" and "rendered useless"); *Withers,* 1998 ME 164, ¶ 8, 714 A.2d 798 (upholding a jury's verdict against a defendant on a claim of conversion because the jury could have found that the plaintiff's property was "lost or ruined").

[¶ 24] This does not constitute conversion. *See* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 15 (stating that conversion would not apply where the "[i]ntention [is] good, the duration brief, the event harmless"). Therefore, the claim for conversion must fail as

need only make a demand if the holder took     the property rightfully").

to both the individual Lougees and the Conservancy.

### E. Intentional Infliction of Emotional Distress

[¶ 25] To survive summary judgment on this claim, the Lougees must present evidence that (1) "the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from the defendant's conduct"; (2) "the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; (3) "the actions of the defendant caused the plaintiff's emotional distress"; and (4) "the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Lyman v. Huber*, 2010 ME 139, ¶¶ 16, 21–23, 10 A.3d 707 (alterations omitted).

[¶ 26] Contrary to the Lougees' contention, in the context of summary judgment on a claim for intentional infliction of emotional distress, "it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Champagne v. Mid–Me. Med. Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842 (quotation marks omitted). It was within the court's discretion to decide whether the conduct here was so atrocious and intolerable as to permit recovery on this claim, and we find no error in the court's determination. *See id.* Although Jim found the incident more distressing than Eleanor or David, to establish liability the Lougees must show that the distress caused would be unbearably severe to an ordinarily-sensitive plaintiff. *See Lyman*, 2010 ME 139, ¶ 21, 10 A.3d 707 ("The fourth element of the tort of intentional infliction of emotional distress

imposes an objective standard of proof."); *Gammon v. Osteopathic Hosp. of Me., Inc.*, 534 A.2d 1282, 1284–85 & n. 8 (Me. 1987) (noting that the "reasonable person" in the context of determining the severity of emotional distress is a normally-constituted, ordinarily-sensitive plaintiff). Eleanor and David experienced general feelings of upset and defeat that, as a matter of law, are not substantial enough to qualify as emotional distress "so severe that no reasonable person could be expected to endure it." *See Schelling v. Lindell*, 2008 ME 59, ¶¶ 25–26, 942 A.2d 1226. Therefore, CitiMortgage, Safeguard, and D & S are entitled to summary judgment because the Lougees have failed to establish a prima facie case as to each element of this claim.

### F. Punitive Damages

[¶ 27] To survive summary judgment on this claim the Lougees must present evidence that D & S acted with malice or implied malice. *See Shrader–Miller v. Miller*, 2004 ME 117, ¶ 20, 855 A.2d 1139; *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me.1985). Malice can be implied where the defendant's deliberate conduct is sufficiently "outrageous," but it cannot be implied "by the defendant's mere reckless disregard of the circumstances." *Tuttle*, 494 A.2d at 1361.

[¶ 28] The Lougees have failed to offer prima facie evidence that the behavior here was deliberate and outrageous, rather than reckless. *See id.* at 1361–62. The Lougees argue that malice can be implied from "the disturbing pattern of outrageous and intolerable business practices" that led to the incident here. However, they have failed to present facts establishing a pattern of behavior or a systematic disregard for property. There is nothing in the summary judgment record to suggest that D & S, Safe-

guard, or CitiMortgage secured wrong properties as a matter of course. *See Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821 (stating that summary judgment on issues of intent is appropriate "if the non-moving party rests merely upon conclusory allegations ... and unsupported speculation" (quotation marks omitted)).

### G. Negligence

[¶ 29] To survive summary judgment on this claim the Lougees must present evidence of (1) a duty owed, (2) a breach of that duty, and (3) an injury that is proximately caused by a breach of that duty. *Davis v. Dionne*, 2011 ME 90, ¶ 8, 26 A.3d 801.

[¶ 30] CitiMortgage, Safeguard, and D & S owed both the Conservancy, as legal title holder, and the Lougees, as the equitable title holders, a duty to act with care when identifying and securing mortgaged property in order to avoid securing or damaging property that they have no legal right to enter. *See Alexander v. Mitchell*, 2007 ME 108, ¶ 15, 930 A.2d 1016 ("In a tort analysis, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk." (quotation marks omitted)); *Mastriano v. Blyer*, 2001 ME 134, ¶ 12, 779 A.2d 951 (naming "otherwise conduct[ing] ourselves or our business in ways that do not cause injury to others" as a commonly-recognized duty). There is prima facie evidence that the duty was breached, and that the Lougees have suffered harm as a result.

[¶ 31] Apparently, the court granted summary judgment on the basis that negligence would not entitle the Lougees to any damages in addition to those recoverable pursuant to trespass. However, the Lougees have established a prima facie case for each element of negligence. Their negligence claim is viable and they could prevail and recover on negligence alone, even if their trespass claims fail. *See State v. Dodge*, 397 A.2d 588, 591 (Me.1979) (noting that, pursuant to M.R. Civ. P. 8(e)(2), "any careful civil lawyer would include a negligence claim as well as one for an intentional tort"). The damages to which the Lougees could be entitled on this claim is a matter for trial, to be decided in tandem with the damages to which they could be entitled for their claims of trespass. Because the Lougees have presented prima facie evidence of negligence, this claim must survive summary judgment.

### H. Conclusion

[¶ 32] The Lougees, as trustees or beneficiaries, have presented prima facie evidence of negligence such that the claim must survive summary judgment. They have also presented prima facie evidence that Safeguard was acting as an agent of CitiMortgage, and therefore the negligence claim survives as to all three defendants. Because the Lougees have not presented prima facie evidence of invasion of privacy, intentional infliction of emotional distress, or punitive damages, and because their conversion claim fails as a matter of law, summary judgment on those claims was proper.

The entry is:

Judgment vacated as to the Lougees' claim of negligence against CitiMortgage, Safeguard, and D & S. Judgment affirmed as to invasion of privacy, conversion, intentional infliction of emotional distress, and punitive damages. Remanded to the Superior Court for further proceedings consistent with this opinion.